**Alfonzo GONZALEZ, Appellant,**

v.

**The STATE of Texas.**

**No. 561–02.**

Court of Criminal Appeals of Texas.

Oct. 8, 2003.

Allen C. Isbell, Houston, for Appellant.

William J. Delmore, III, Asst. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, and COCHRAN, JJ., joined.

### The Issue

Ralph Gonzalez, appellant's counsel of choice was disqualified as counsel on the

State's pretrial motion. The State argued that he would be a witness necessary to establish an essential fact on behalf of appellant and that the dual roles of advocate and witness would taint the jury, resulting in actual prejudice to the State. After conviction, appellant appealed, claiming among other things, that the trial court's ruling dismissing his attorney violated his Sixth Amendment right to counsel of his choice.

We granted review to address under what circumstances the possibility of prejudice to the State's case trumps the defendant's Sixth Amendment right to retained counsel of his choice.

## The Relevant Facts

Appellant and several co-defendants were indicted for engaging in organized criminal activity, to wit, theft. See Tex. Penal Code Ann. § 71.02 (Vernon 1994 & Supp.2001).

The group stole more than $200,000 in an insurance fraud scheme in which automobile accidents were staged and insurance companies were billed for medical treatment of persons purportedly injured in the staged accidents. Appellant was a licensed physician purporting to treat claimants involved in the staged car accidents. Percy Gonzalez, one of the participants in the conspiracy, was the State's key witness against appellant. He had first participated in a staged wreck after which he was attended by appellant. Percy later accepted a job at appellant's clinic, generating phony medical narratives and medical bills under appellant's supervision. Appellant had discussed with Percy the financial arrangements he had with the co-defendant who was in charge of recruiting and paying the numerous individuals who

staged the auto accidents and posed as injured passengers.

After appellant and Percy were indicted, Percy had several telephone conversations and at least two meetings with Ralph Gonzalez, appellant's attorney. During these encounters, it was agreed that appellant would pay Percy $10,000. The reason for the payment was in dispute. The transfer of the first payment of $3,000 was completed. Appellant was present during at least one of the meetings, and Marco Vargas, Percy's friend, was present during at least one meeting and was involved in the transfer of the $3,000. Appellant refused to pay the remaining $7,000.

The State moved to disqualify attorney Gonzalez as appellant's counsel under disciplinary rule 3.08 [1], because he had personal knowledge bearing directly on the guilt or innocence of his client and the credibility of the State's key witness and was therefore a potential witness whose credibility would be at issue regardless of whether he took the stand.

At the hearing on the motion to disqualify, Percy claimed the payment was an attempt to buy testimony favorable to appellant; attorney Gonzalez claimed the money was paid initially out of appellant's moral obligation to help Percy, appellant's employee, pay for an attorney, but that Percy then attempted to extort the money from appellant, threatening to testify unfavorably regarding appellant if appellant did not pay the $10,000. To back this up, attorney Gonzalez offered a transcript of one of the telephone conversations between himself and Percy that he had recorded. He had recorded some, but not all, of the telephone conversations he had with Percy and none of the in-person meetings. He did not introduce the transcript of the recording or any of the re-

---

1. Tex. Disciplinary R. Prof'l Conduct 3.08.

cordings into evidence and had refused to produce them to the prosecution.

Attorney Gonzalez argued, both in his response to the motion to disqualify and at the disqualification hearing, that he should not be disqualified from representing appellant. First, he did not believe that he would be a necessary witness in the case. Second, appellant would suffer a substantial hardship from his disqualification. He based his first argument on the existence of the taped conversations and his ability to impeach Percy's testimony regarding the untaped meetings through rigorous cross-examination. At the hearing, he also focused on his contentions that his testimony would not be adverse or prejudicial to his client, and that whether he would testify was purely speculative.

At the hearing on the motion to disqualify defense counsel, the trial court heard testimony from Percy Gonzalez, Marco Vargas, and attorney Gonzalez, among others, and argument from the State and attorney Gonzalez. The witnesses's testimony focused mainly on detailing what transpired at the meetings and in the conversations attorney Gonzalez had with Percy and what the witnesses believed the basis was for agreeing to pay Percy.

While cross-examining Percy Gonzalez, attorney Gonzalez at one point made the comment to the judge that Percy's answer was "absolutely correct." While cross-examining Vargas, after Vargas testified he had first met attorney Gonzalez at the Red Lobster, attorney Gonzalez asked "Would it surprise you that I have never met with you or anybody at Red Lobster?"

The trial court granted the State's motion to disqualify defense counsel.

Thereafter, a joint trial took place and appellant was convicted.[2] After appellant's motion for new trial was denied, he appealed, raising among his points of error the violation of his Sixth Amendment right based on the trial court's pre-trial ruling disqualifying his counsel of choice.

The court of appeals affirmed appellant's conviction, finding the trial court did not abuse its discretion in determining that dismissal was justified.[3] The court of appeals concluded the record supported the finding that, there existed, at the time of disqualification, a very real probability that attorney Gonzalez would be called upon to testify on a hotly contested, very controversial issue that was of paramount importance to the defense, thus making his credibility an issue. Further, the court of appeals found the State had sufficiently demonstrated attorney Gonzalez's continued representation, in light of such testimony, would cause actual prejudice to the prosecution.

### The Law

The Federal and Texas Constitutions, as well as Texas statute, guarantee a defendant in a criminal proceeding the right to have assistance of counsel.[4] The right to assistance of counsel contemplates the defendant's right to obtain assistance

---

**2.** On November 8, 1996, over six months after the trial court granted the State's motion to dismiss defense counsel, the trial court ruled that a number of co-defendants, including appellant, would be tried jointly. Three months after that, the trial court granted one of these co-defendant's motion to suppress evidence on the allegations of bribery and extortion which were the basis upon which attorney Gonzalez was disqualified. The court granted the motion because, while relevant, the probative value of the evidence was substantially outweighed by its prejudicial effect to the co-defendants.

**3.** *Gonzalez v. State,* 63 S.W.3d 865 (Tex.App. Houston [14th] 2001).

**4.** *See* U.S. Const., 6th Amend.; Tex. Const., Art. I § 10; Tex.Code Crim. Proc. Art. 1.05.

from counsel of the defendant's choosing.[5] However, the defendant's right to counsel of choice is not absolute.[6] A defendant has no right to an advocate who is not a member of the bar, an attorney he cannot afford or who declines to represent him, or an attorney who has a previous or ongoing relationship with an opposing party.[7] Additionally, while there is a strong presumption in favor of a defendant's right to retain counsel of choice, this presumption may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice.[8] However, when a trial court unreasonably or arbitrarily interferes with the defendant's right to choose counsel, its actions rise to the level of a constitutional violation.[9] Therefore, courts must exercise caution in disqualifying defense attorneys, especially if less serious means would adequately protect the government's interests.[10]

■ In moving to disqualify appellant's counsel of choice, the government bears a heavy burden of establishing that disqualification is justified.[11]

■ Counsel may be disqualified under the disciplinary rules when the opposing party can demonstrate actual prejudice resulting from opposing counsel's service in the dual role of advocate-witness.[12] Allegations of one or more violations of the disciplinary rules or evidence showing only a possible future violation are not sufficient.[13] In determining whether counsel should be disqualified because counsel is a potential witness, Texas courts use rule 3.08 of the Texas disciplinary rules of professional conduct as a guideline.[14] The

---

5. *See Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex.Crim.App.1981); *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932)(defendant should be afforded fair opportunity to secure counsel of his own choice); *Chandler v. Fretag*, 348 U.S. 3, 9, 75 S.Ct. 1, 99 L.Ed. 4 (1954)(same); *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942)(same).

6. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

7. *Id.*

8. *Id.* at 158–60, 108 S.Ct. 1692; *Webb v. State*, 533 S.W.2d 780, 784 (Tex.Crim.App.1976).

9. *United States v. Collins*, 920 F.2d 619, 625 (10th Cir.1990).

10. *United States v. Diozzi*, 807 F.2d 10 (1st Cir.1986).

11. *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir.1986).

12. *House v. State*, 947 S.W.2d 251 (Tex.Crim. App.1997); *Brown v. State*, 921 S.W.2d 227 (Tex.Crim.App.1996); *Harrison v. State*, 788 S.W.2d 18 (Tex.Crim.App.1990).

13. *In the Interest of A.M.*, 974 S.W.2d 857, 864 (Tex.App.San Antonio 1998, no pet.).

14. Tex. Disciplinary R. Prof'l Conduct 3.08; *House v. State*, 947 S.W.2d at 252–253; *Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 421 (Tex.1996).

Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct, provides in part:

(a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se; or

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

rule does not present the disqualification standard, but does provide considerations relevant to the determination.[15]

The comments following the rule recognize that rule 3.08 sets out a disciplinary standard and is not well suited to use as a standard for procedural disqualification but can provide guidance in those procedural disqualification disputes where the party seeking disqualification can demonstrate actual prejudice to itself resulting from the opposing lawyer's service in the dual roles.[16] The party seeking disqualification, however, cannot invite the necessary actual prejudice by unnecessarily calling the opposing counsel as a witness.[17]

### Analysis

The arguments appellant urges in support of his three grounds for review can be broken down into five assertions of error on the part of the court of appeals. (1) The court of appeals applied the abuse of discretion standard incorrectly, because the record demonstrates the trial court did not correctly apply the law. (2) The court of appeals erred by not applying the same actual prejudice requirement to the State as was applied to the defendant in *House*. (3) The court of appeals erred in basing its decision on the unsworn-witness rule, which is not yet adopted in Texas. (4) The court of appeals erred by finding that speculation, regarding both whether counsel was a necessary witness and whether performing such a dual role in this instance would result in actual prejudice to the State, was sufficient to support the

trial court's ruling. (5) Finally, the court of appeals erred in not considering whether the trial court had considered less drastic means to protect the State's interests.

First, appellant contends the court of appeals applied the abuse of discretion standard incorrectly. Appellant argues that both the State's failure to allege or show actual prejudice and comments made by the judge at the hearing regarding his interpretation of the disciplinary rule, demonstrate that the trial court did not consider whether the State had shown that actual prejudice would result from attorney Gonzalez's continued representation of appellant.

■ The State's motion alleged that the jury's perspective would be tainted by attorney Gonzalez's continued representation and provided several reasons in support of that fact, all regarding attorney Gonzalez's personal knowledge of a contested matter bearing directly on appellant's guilt that the State intended to introduce at trial. The State's motion also suggested that mistrial would result due to the taint. Therefore, the State's motion sufficiently alleged actual prejudice flowing from the alleged violation of disciplinary rules.

■ In support of his argument that the trial court did not correctly analyze or apply the law, appellant points to one specific statement the judge made during the disqualification hearing. The judge stated, "As I read the rule, a lawyer cannot just act as a lawyer for a person if he is going to be a witness." However, the judge

(b) A lawyer shall not continue as an advocate in a pending adjudicatory proceeding if the lawyer believes that the lawyer will be compelled to furnish testimony that will be substantially adverse to the lawyer's client, unless the client consents after full disclosure.

15. *Anderson Producing Inc.*, 929 S.W.2d at 421; *House*, 947 S.W.2d at 252 (citing comment 10 to rule, which states: "this rule may furnish some guidance").

16. Tex. Disciplinary R. Prof'l Conduct 3.08 cmt. 9 & 10.

17. *Id.*

made other statements during the hearing regarding his understanding of the law. The judge also stated, "[T]he lawyer is disqualified to act as a lawyer when he is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client unless certain things are met, and that's the only fact issue before the Court today .... the rule is not written such, that you could without any restraints whatsoever be a witness and still represent your client." After attorney Gonzalez said his interpretation of the rule was that "I have to have something substantially detrimental to [my client] for me to be able to prove an essential element to find my client guilty," the judge stated, "I do not understand it to be that way."

▮ Although none of these statements discuss the need for the State to demonstrate actual prejudice, neither do they conclusively demonstrate that the trial court did not consider actual prejudice. Although the trial court did not make an explicit finding that the State had demonstrated actual prejudice would occur from attorney Gonzalez's continued representation, we must defer to the implied findings that the record supports.[18] Also, we uphold the trial court's ruling if it is correct on any theory of the law and as long as the trial court's ruling is within the zone of reasonable disagreement.[19] Therefore, the court of appeals did not err in failing to find the trial court abused its discretion by failing to consider whether actual prejudice would result from the continued representation when the record supports a

finding that the trial court did consider actual prejudice. Appellant's first contention is overruled.

Second, appellant contends that the court of appeals erred in failing to apply the same burden of proving actual, not just speculative, prejudice to the State as was applied to the defendant in *House*.[20] The court of appeals, in its statement of law, cited *House* for the proposition that a party moving to disqualify opposing counsel for an alleged disciplinary rule violation must demonstrate actual harm,[21] and the State does not contest that actual harm is required. Therefore, the crux of appellant's argument is that the court of appeals did not correctly apply the requirement of actual prejudice in its review of the trial court's ruling.

▮ It is well settled that a party seeking to disqualify the opponent's attorney for violation of an ethical rule must demonstrate that such violation will result in actual prejudice to the moving party. However, our case law is meager concerning what it means for the State to demonstrate actual prejudice arising from a defense counsel's violation of Rule 3.08 or what it means for a party to demonstrate actual prejudice when a pretrial motion to disqualify is involved. There is only one other case in this state's body of criminal law that addresses a factual scenario where the prosecution moved to have the defense attorney disqualified.[22] There are less than a handful of cases dealing with pretrial motions to disqualify.

18. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex.Crim.App.2002).

19. *See Knox v. State*, 934 S.W.2d 678 (Tex. Crim.App.1996).

20. *House*, 947 S.W.2d at 251.

21. *Gonzalez*, 63 S.W.3d at 876.

22. *Harrison*, 788 S.W.2d at 18 (finding prosecution after mistrial barred by double jeopardy because mistrial was not manifestly necessary. The defense attorney did not inject his credibility as an issue in the trial by indicating on cross-examination that he had personal knowledge of a tangential issue.).

■ In *House*, this Court said that to obtain relief from the opposing party's alleged ethical violation, the defendant must show "the alleged disciplinary rule violations by opposing counsel deprived him of a fair trial or otherwise affected his substantial rights."[23] Appellant contends substituting the word "State" for "defendant" would yield the correct definition describing when the State has shown actual prejudice. However, that definition of actual prejudice does not easily apply to the State. A defendant's right to a fair trial, or due process, emanates from the Fourteenth Amendment of the United States Constitution regarding individual rights. Furthermore, it is not clear what the State would be required to demonstrate to show that its "substantial rights" would be affected by an opposing attorney's alleged ethical violation. Similar "substantial rights" language is used in Rule 44.2(b) of the Texas Rules of Appellate Procedure concerning harmless error. In that harmless error context, a reviewing court must determine whether the error had a substantial influence on the proceeding itself or whether it had a substantial and injurious effect or influence on the jury's verdict.[24] Assuming, without deciding, that this is the standard the State must meet to show that disqualification of opposing counsel is justified, we find that the court of appeals did not err in concluding that the State met its burden in this case.

If counsel were to have testified, the State would have been prejudiced not only by the undue weight jurors might have attach to counsel's testimony, but also by the confusion that would most likely have resulted during argument regarding whether counsel was summarizing evidence or further testifying as to personal knowledge. However, even if attorney Gonzalez did not testify, but referred to his own recollection of the events through cross-examination, the State would have been prejudiced by the implication to the jury that his questions represented the truth based on his personal knowledge of what had occurred. The State would have been prejudiced by the inability to clarify counsel's testimony and impeach counsel's credibility. Counsel's personal knowledge regarding the conversations with the State's witness would have affected the jury's perspective, not only on the witness tampering issue, but also on the credibility of the State's key witness against appellant regarding the facts of the charged crime. Therefore, the confusion resulting from counsel's dual roles would most likely have substantially affected the jury's verdict. If the confusion were such that it would have prevented an impartial verdict from being reached, it could have resulted in a mistrial, as the State argued.[25]

■ However, even if the State had not met its burden, the trial court has an independent duty to ensure criminal defendants receive a fair trial that does not contravene the Sixth Amendment's central aim of providing effective assistance of counsel once issues are raised that indicate a concern.[26] Counsel's dual role may also have prejudiced the defendant, especially if the State effectively impeached attorney Gonzalez on the stand. At the hearing for disqualification, the State discussed some evidence it intended to introduce, if neces-

---

23. *House*, 947 S.W.2d at 253.

24. *See Burnett v. State*, 88 S.W.3d 633, 637 (Tex.Crim.App.2002).

25. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim.App.1999), *cert. denied* 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000).

26. *Wheat v. United States*, 486 U.S. 153, 161, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

sary, to impeach counsel's credibility. For all these reasons, we find the court of appeals did not incorrectly analyze the actual prejudice requirement in making its determination. Appellant's second contention is overruled.

Third, appellant contends the court of appeals erred in relying either on the unsworn witness rule, not yet recognized in Texas, or on the State's ability to call counsel as a witness, in finding the record supported the trial court's ruling that he was a necessary witness to establish an essential fact on behalf of his client. He further argues that the court of appeals erred in so concluding without explaining why it would be necessary for the State to call counsel as a witness and without explaining what essential fact his testimony could have established, especially when his testimony was not substantially adverse to his client.

The court of appeals reasoned that, regardless of whether defense counsel took the witness stand, actual prejudice would result to the State when the State introduced evidence of witness tampering if defense counsel were to continue representing appellant. If he did not testify, the fact that his personal knowledge of the disputed events would be evident to the jury would likely cause the jury to interpret his questions or summation as testimony conveying his own version of the facts, and such summation would be unsworn and would not be subject to cross-examination. If he did testify, although his statements on the stand would be sworn and the State would be able to cross-examine and possibly impeach him while he was on the stand, when he resumed his argument as counsel, there would still be confusion as to whether to

interpret his statements as evidence or as an analysis of the evidence.

We have recognized that Rule 3.08 does not provide the standard for disqualification, but merely provides the trial court some guidance regarding considerations relevant to the determination of when disqualification is justified. Comment 4 to Rule 3.08 indicates that where the testimony the defendant's attorney may be called upon to give is not substantially adverse to the defendant, the principle concern over allowing a lawyer to serve as both an advocate and witness for a client is the possible confusion that those dual roles could create for the finder of fact, especially where the lawyer's testimony concerns a controversial or contested matter because the dual role can unfairly prejudice the opposing party.

In *Peng*,[27] a decision from the United States Court of Appeals for the Second Circuit, defense counsel elicited testimony from the government's witness regarding post-arrest contacts with defendant and defendant's counsel, which plainly showed counsel to be a participant in an event relating to the alleged fraud, and which revealed the substance of the conversations was in dispute. This irreversibly injected counsel's credibility as an issue in the trial, spurring the trial judge to intervene and question defense attorney and witness regarding the substance of the contacts. The trial court, after considering several alternatives, determined that disqualification of the defendant's attorney was required and that there was a manifest necessity to declare a mistrial. One of the alternatives counsel suggested was the possibility of having another lawyer who was in attendance at the meeting take the stand to rebut the State witness's testimony.[28] The court determined that even if

---

**27.** *United States v. Peng,* 766 F.2d 82, 84–87 (2nd Cir.1985).

**28.** *Id.* at 84.

someone other than counsel testified to the conversation, counsel would still be placed before the jury in the dual roles of both advocate and unsworn witness, with personal knowledge of disputed facts.[29] The court concluded that because counsel's disqualification would not work such a substantial hardship on the defendant as to justify counsel's continuation, the risk of confusing the jury regarding counsel's dual roles as advocate and witness if counsel were to remain outweighed the defendant's sixth amendment interest in choice of counsel.[30] The court of appeals found the district court's fear that the jury would be unacceptably affected by counsel's double role as advocate and unsworn witness quite understandable, the disqualification an appropriate exercise of discretion, and the mistrial proper, and concluded that the retrial was not barred by double jeopardy.[31]

In overturning the decision of the court of appeals in *Harrison* and finding retrial after mistrial was barred by double jeopardy, this Court distinguished *Peng* on the facts, but we did not reject the reasoning of the Second Circuit's unsworn witness rule.[32] In *Harrison*, the defendant was accused of hindering apprehension. In that case, defense counsel, suggested on cross-examination that the police officer who was subdued was wrong about having sustained a black-eye from another person in the altercation, by suggesting counsel had seen the officer and had not seen a black-eye.[33] This Court found that defense counsel's cross-examination of State's witness did not irreversibly inject counsel's credibility as an issue in the trial

because the issue about which counsel suggested he had personal knowledge was merely tangential to the allegations lodged against his client and if an issue, only a minor one because counsel did not pursue that theory.[34] This Court also found that disqualification was not required, reasoning that although defense counsel may have made himself a potential witness, the matter of credibility presented by the questioning was not important to the case or any issue concerning the offense, and did not impeach the credibility of the State's witness to any great degree, if at all, on a material issue.[35]

■ In this case, the record shows that the State intended to introduce evidence about which defense counsel had personal knowledge. The fact that defense counsel had personal knowledge would become obvious through the testimony of the State's witness. This evidence, an allegation that defendant, through his attorney, attempted to bribe a witness for favorable testimony, was not merely tangential to the case or to defendant's guilt, but would support an inference that such conduct demonstrated defendant's consciousness of guilt for the crime charged.

Defense counsel, testifying at the disqualification hearing that he knew from his personal knowledge that the allegations were false, proposed to impeach the State's witness with tape recordings or transcripts of several, but not all, of the conversations he had with the State's witness involving the exchange of money and with "forceful cross-examination." From defense counsel's attempt to cross-examine the State's witness at the disqualification

29. *Id.* at 85.

30. *Id.*

31. *Id.* at 87.

32. *Harrison,* 788 S.W.2d at 22–23.

33. *Id.* at 20.

34. *Id.* at 23–24.

35. *Id.* at 24.

hearing, it is apparent that defense counsel would face difficulty in such a cross-examination and that through such cross examination it would certainly become apparent that counsel had personal knowledge of the events which conflicted with the witness's testimony. Thus, even without testifying, the jury might well have interpreted his questions or summation as testimony conveying, not only the best possible scenario of the events for his client, but his own recollection of the events and, not being subject to cross-examination or explicit impeachment, would create more confusion for the jury in attempting to discern the truth than if counsel appeared as a sworn witness.

Because the purpose of Rule 3.08 is to address the possible confusion that can arise for the trier of fact when counsel's own credibility is called into question, the court of appeals did not err in at least alternatively relying on the prejudice that would result from defense counsel's forceful cross-examination and failure to take the stand in finding that the trial court did not abuse its discretion in finding that disqualification was justified.

■■■ The court of appeals also recognized that defense counsel's decision to not testify would not determine whether defense counsel would testify, because the State could call counsel as a witness. This suggests that the court of appeals found that the record supported the conclusion that it would be necessary for the State to call attorney Gonzalez as a witness if he did not put himself on the stand. When the record supports the court's conclusions, neither the trial court nor the court of appeals is under any obligation to explain why it would be necessary for the State to call counsel as a witness or what essential fact defense counsel's testimony would establish.

It is not unreasonable to conclude that it would have been necessary for the State to call attorney Gonzalez as a witness. Because it would have been evident that attorney Gonzalez was involved in the conversations about which Percy testified, questions by attorney Gonzalez suggesting facts contrary to Percy's testimony about the content of the conversations might have been misunderstood by the jury to be attorney Gonzalez's testimony as to what occurred at those meetings. Attorney Gonzalez was the only witness the State could have called to clarify for the jury what attorney Gonzalez would testify under oath had occurred during those conversations. Attorney Gonzalez's sworn testimony would have either been adverse to his client or, as he claimed it would be during the hearing, adverse to the State, tending to establishing on behalf of appellant that appellant did not attempt to bribe the State's witness. If attorney Gonzalez's testimony was adverse to the State, the State would have needed to impeach his credibility in order to rehabilitate the credibility of the State's witness. Further, because the State could not have compelled appellant to testify as to what occurred at the meetings with the State's witness, attorney Gonzalez was the only witness to the conversation the State could have called to rehabilitate its witness after attorney Gonzalez cross-examined Percy about the conversations. The court of appeals erred neither by considering the confusion caused by an unsworn witness acting as advocate nor by considering the necessity of the State to call such an advocate as a sworn witness. Neither did the court err by not explaining what it considered the essential fact to be or why it considered the State's calling defense counsel as witness to be necessary. Appellant's third contention is overruled.

Fourth, appellant contends that the court of appeals erred in finding that the

trial court's ruling was reasonable and not arbitrary when the ruling was impermissibly based on mere speculation regarding both whether counsel was a necessary witness and whether performing such a dual role in this instance would result in actual prejudice to the State.

The court of appeals recognized in its legal framework that a court should not reject a defendant's chosen counsel on "[u]nsupported or dubious speculation." [36] However, when a judge makes a ruling on disqualification at a pretrial hearing, some speculation is involved. The Supreme Court of the United States recognized this in *Wheat* in relation to conflicts of interest leading to disqualification. The Supreme Court held that the presumption in favor of petitioner's counsel of choice may be overcome not only by a demonstration of actual conflict but by a showing of serious potential for conflict.[37] While comment 10 to Rule 3.08 states that the rule provides guidance where the movant can demonstrate actual prejudice to itself, comment 7 implies approval of pretrial procedural disqualification motions, suggesting that the movant should act at the earliest opportunity to avoid being subjected to the actual prejudice resulting from the opponent's acting in the dual roles and to prevent creating a situation in which the opponent's client would experience substantial hardship were his counsel disqualified. Some speculation will be inherent in such pretrial hearings. The trial court's speculation, however, cannot be unsupported or dubious.

The court of appeals concluded that, at the time the judge made the disqualification ruling, the allegation of witness tampering was still a viable part of the case

and "a very real probability existed that attorney Gonzalez would be called upon to testify concerning the alleged bribery of a key witness." [38] Both the appellant and the court of appeals' dissent disagree with the trial court's ruling and the court of appeals' majority analysis of the probabilities involved. The court of appeals' dissent concluded that the probabilities were such that the issue would not arise at trial and therefore neither Percy nor attorney Gonzalez would have been testifying regarding the bribery/extortion issue. This conclusion was based on both the State's knowledge that attorney Gonzalez had tapes of his conversations with Percy with which to impeach Percy and the dissent's opinion that appellant had nothing to gain by raising the issue. Appellant makes essentially the same argument, citing the portion of one of the tape transcripts that attorney Gonzalez read into the record as illustrating the quality and force of the tapes' impeaching evidence. Appellant also argues that the State did not object at the hearing that the transcript of the taped conversation was not accurate or that the taped conversation was not authentic.

Whether the dissent's conclusion is reasonable, based on the evidence before the trial court at the time of the disqualification hearing, is irrelevant. The court of appeals found that the record supported the trial court's conclusion that there was a real possibility that counsel would be called as a witness. Besides the implication, based on the co-defendant's motion to exclude the evidence eight months later, that the State did intend to introduce the bribery evidence at trial, the State suggested that the admissibility of the tapes

---

**36.** *Gonzalez,* 63 S.W.3d at 875, *citing Wheat,* 486 U.S. at 166, 108 S.Ct. 1692(Marshall, J., dissenting).

**37.** *Wheat,* 486 U.S. at 163–64, 108 S.Ct. 1692.

**38.** *Gonzalez,* 63 S.W.3d at 880.

would be contested at trial, there were conversations between Percy and counsel relevant to the bribery issue that were not tape recorded, and the portion of the transcript that counsel read into the record to illustrate the quality and force of the tapes' impeaching evidence contained an accusation by the State's witness that counsel was paying for his testimony and a self serving statement made by the attorney, with knowledge that the conversation was being tape recorded and that prosecution in the relevant case was ongoing, denying the accusation. The court of appeals did not err in finding the trial court's conclusion that there was a real possibility that attorney Gonzalez would have to testify was within the zone of reasonable disagreement. Appellant's fourth contention is overruled.

Fifth, appellant contends the court of appeals erred in not determining whether the trial court had considered less drastic means to protect the State's interests. The court of appeals did address one of the alternatives appellant suggested in his brief, the same argument appellant made to the trial court at the hearing on the motion to disqualify. Appellant first argues that the State's interests would have been protected if defense counsel had been held to his promise not to put himself on the stand to testify and had been allowed to rebut Percy Gonzalez's testimony by introducing the tapes or transcripts of the conversations he had recorded and by cross-examining Percy regarding the untaped conversations.

■ As long as the basis for the disqualification is adequately shown by the record, the trial judge need not expressly state its consideration of less drastic alter-

natives in the record.[39] The court of appeals explained why the record showed appellant's first suggestion would not adequately protect the State's interest.

Appellant also argues that the trial court should have considered the less drastic alternative of excluding the evidence of the witness tampering/extortion to protect the State's interests. Both appellant and the court of appeals' dissent point to the trial court's eventual exclusion of the evidence to support the proposition that this was a viable alternative the trial court should have considered. However, neither suggest on what grounds such exclusion would have been proper at the time of the disqualification hearing.

Although the trial court did eventually exclude the evidence, it was excluded because the trial court found, after the trial court determined the co-defendants would be tried jointly, that the evidence would be unduly prejudicial to the co-defendants. There is no suggestion that the evidence of bribery/extortion would have been substantially more prejudicial than probative to appellant. Nor did appellant make such a motion at the disqualification hearing.

■ Appellant seems to suggest that exclusion would have been appropriate solely to protect the defendant's right to counsel of choice. However, the defendant's right to counsel of choice "cannot be insisted upon or manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice."[40] This has been held to mean the defendant's right to a particular counsel should not be permitted to impose artificial disadvantages upon the government by truncating the State's evidence.[41] The

---

**39.** *Harrison,* 788 S.W.2d at 22.

**40.** *United States v. Cortellesso,* 663 F.2d 361, 363 (1st Cir.1981).

**41.** *Id.* (fact that evidence was available from other sources did not make it less necessary for the State to call defendant's counsel when defendant's counsel's testimony was the best

State intended to introduce the bribery evidence as evidence of appellant's consciousness of guilt. While excluding such evidence did not render the State's case against appellant impotent, as evidenced by his conviction, it may have been the best evidence the State had to demonstrate appellant's intent. As we fail to find any proper basis on which the trial court could have excluded the evidence based on the information before the trial court at the time of the hearing, we cannot find that the court of appeals erred in not finding that the trial court abused its discretion by not excluding the evidence of bribery.

Thus we do not find that, on these grounds, the court of appeals erred in finding that the trial court did not abuse its discretion in disqualifying counsel. Appellant's final contention is overruled.

We affirm the judgment of the court of appeals.

HERVEY, J., filed a dissenting opinion, in which KEASLER and JOHNSON, JJ., joined.

WOMACK, J., dissented without opinion.

HERVEY, J., dissenting in which JOHNSON and KEASLER, JJ., joined.

This case is a reminder of what the right to counsel provision of the Sixth Amendment was originally designed to accomplish. Before the United States Supreme Court decided that the Sixth Amendment's right to counsel provision required the government to insure that criminal defendants have the effective assistance of counsel under the rationale that criminal defense lawyers contribute to a search for the truth,[1] this right to counsel provision was originally understood as only prohibiting the government from interfering with a defendant's right "to employ a lawyer to assist in his defense." *See Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158,

---

evidence and failure to call defendant's counsel would encourage the fact finder to make improper inferences regarding counsel's failure to testify.)

**1.** *See Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1513 n. 17, 146 L.Ed.2d 389 (2000) (citing Justice Powell's concurring opinion in *Kimmelman v. Morrison* for the proposition that the "prejudice" component of the constitutional effective assistance of counsel test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"); *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 2593–94, 91 L.Ed.2d 305 (1986) (Powell, J., concurring in the judgment) (defendant not prejudiced by counsel's failure to file meritorious motion to suppress that would have changed the result of the proceeding because this did not affect the reliability of the determination of the defendant's guilt); *see also Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993) (right to effective assistance of counsel is not recognized "for its own sake"

and absent some effect of counsel's challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated and ineffective assistance of counsel prejudice analysis "focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective"); *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657 (1984) (counsel's functioning in a meaningful adversarial role "will best promote the ultimate objective that the guilty be convicted and the innocent go free"); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (defendant alleging prejudice from counsel's deficient performance must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable") and at 2077 (Marshall, dissenting) (complaining that the majority opinion rested on the rationale "that the only purpose of the constitutional guarantee of effective assistance of counsel is to reduce the chance that innocent persons will be convicted").

1160–61, 59 L.Ed.2d 383 (1979); *Hernandez v. State*, 988 S.W.2d 770, 773 (Tex.Cr.App.1999); W. Beaney, *The Right To Counsel In American Courts*, at 27–33, 226 (1955) (Sixth Amendment's right to counsel provision originally intended as nothing more than guaranteeing the right to retain counsel, and before 1938 "no responsible authority, scholarly or judicial" claimed otherwise). In this case, the government interfered with appellant's basic right to employ a lawyer to assist in his defense by having appellant's retained counsel of choice removed from the case.

The Court, however, decides that the government could do this under our decision in *House v. State*, 947 S.W.2d 251 (Tex.Cr.App.1997). We decided in *House* that the defendant lacked standing to complain about the opposing party's violation of the same advocate/witness rule at issue in this case (Rule 3.08) unless the defendant could show that this disciplinary rule violation resulted in "actual prejudice" to him. *See House*, 947 S.W.2d at 253. The rationale for this is that a violation of the advocate/witness rule usually results in harm to the client and not to the opposing party, so a criminal defendant should not be permitted to use the rule as a sword to obtain a reversal of his conviction for the other party's disciplinary rule violations that do not harm the defendant. *See id.*[2]

The Court decides that the government was entitled to remove appellant's retained lawyer under our decision in *House* because the government proved that it would suffer "actual prejudice" from appellant's lawyer testifying at trial.[3] Although I agree generally with much of the discussion in the dissenting opinion of the Court of Appeals, I will nevertheless assume that the trial court was entitled to find that appellant's retained lawyer would be a "key witness" on the "witness tampering" issue which could have been (although it did not turn out to be) an important issue bearing directly on appellant's guilt.[4]

The government's claim that this would have resulted in "actual prejudice" to the

---

**2.** Comment 9 to Rule 3.08 states that Rule 3.08 "sets out a disciplinary standard and is not well suited to use as a standard for procedural disqualification" because its two principal purposes protect the client (not the opposing party). These purposes are: 1) not to compromise the client's case "by a lawyer who could be a more effective witness for the client by not also serving as an advocate," and 2) "to insure that a client is not burdened by counsel who may have to offer testimony that is substantially adverse to the client's purpose."

Comment 10 to Rule 3.08 states that Rule 3.08 "may furnish some guidance in those procedural disqualification disputes where the party seeking disqualification can demonstrate actual prejudice to itself resulting from the opposing lawyer's service in the dual roles." Comment 10 further states that "a lawyer should not seek to disqualify an opposing lawyer by unnecessarily calling that lawyer as a witness." In this case, however, the trial court apparently was entitled to find that there was a very real possibility that it would

have been necessary for the government to call appellant's lawyer as a witness on a key issue in the case.

**3.** This assumes that the government's ability to show "actual prejudice" to the government from appellant's lawyer testifying at appellant's trial trumps appellant's basic Sixth Amendment right to employ a lawyer to assist in his defense. This was not a consideration in *House* since the government has no Sixth Amendment right to counsel and it was the defendant who was complaining about the government's violation of the advocate/witness rule.

**4.** The dissenting opinion in the Court of Appeals determined that the evidence did not support a finding that appellant's retained lawyer was a "key witness" on the "witness tampering" issue. *See Gonzalez v. State*, 63 S.W.3d 865, 884 (Tex.App.-Houston [14th Dist.] 2001) (Amidei, J., dissenting on reh'g).

government boils down to possible "juror confusion" that might have resulted in a mistrial. The possibility that jurors would be confused by key testimony from appellant's retained lawyer bearing directly on appellant's guilt, however, is insufficient by itself to trump the Sixth Amendment's original core protection of prohibiting the government from interfering with a defendant's right to employ a lawyer to assist in his defense. And, consistent with the first stated purpose of rule 3.08 (set out in comment 9 to the rule), it appears that appellant (and not the government) was more likely to suffer actual prejudice from any juror confusion over appellant's retained lawyer testifying for appellant on a key issue in the case.

Appellant, of course, waived his right to complain about any of this prejudice in either a motion for mistrial or in support of an ineffective assistance of counsel claim since appellant insisted on his retained lawyer representing him despite the potential for the lawyer's violation of the advocate/witness rule. If appellant wanted to hire a lawyer who would compromise appellant's case by testifying at trial, then that was appellant's choice, a choice backed up by the Sixth Amendment to the United States Constitution.[5]

I would decide that the government's removal of appellant's retained lawyer violated appellant's Sixth Amendment right to counsel. This would require that the judgment of the Court of Appeals be reversed and the case remanded to the trial court for a new trial since this is a "structural" defect that is not subject to a harm analysis. *See Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 1265, 113 L.Ed.2d

302 (1991); *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Cr.App.1997).

I respectfully dissent.

---

5. It is, of course, well settled that a defendant who cannot afford to hire a lawyer does not have the "right to counsel of his own choosing." *See Buntion v. Harmon,* 827 S.W.2d 945, 949 (Tex.Cr.App.1992).