**In re STATE of Texas, Relator.**

**No. 12–07–00280–CR.**

Court of Appeals of Texas, Tyler.

Feb. 29, 2008.

Michael J. West, for relator.

Ronnie Van Baugh, for real party in interest.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

SAM GRIFFITH, Justice.

The State of Texas seeks a writ of mandamus ordering the trial court to disqualify a defendant's trial counsel in a criminal case.[1] We deny the requested relief.

[1] The respondent is the Honorable Randall Lee Rogers, Judge of the County Court at Law

## BACKGROUND

According to a police report filed as an appendix to the State's petition, Lyle Smith and Jason Usry were involved in a motor vehicle accident. At least one of the witnesses suggested that the two men had been racing their automobiles, and both men were arrested for driving while intoxicated. A trial was held in the matter of the *State of Texas v. Lyle Smith,* in which Smith was charged with the class "B" misdemeanor offense of driving while intoxicated. During trial, the State offered a videotape recorded by a police officer investigating the case. The trial court excused the jury and held a hearing on the admissibility of the tape. The attorneys had attempted to reach an agreement to admit the tape, but Smith's counsel explained to the court that the parties had not been able to do so and that he objected to parts of the tape on various grounds. The State responded that the entirety of the tape was admissible and that Smith's counsel should be disqualified because his representation of both Smith and Usry presented a conflict of interest because the State intended to call Usry as a witness. Smith's counsel argued that there was no conflict of interest and that the State could not call Usry as a witness because it had not disclosed him prior to trial. The trial court suspended the proceedings and took up the matter the following day.

The next day, the trial court considered whether Smith's counsel should be disqualified and whether Usry could be called by the State as a witness. The State conceded that Usry had not been listed as a witness as required but argued that he was a rebuttal witness. The trial court did not make a formal ruling as to whether Usry could be called as a witness, but said "I understand you're thinking of rebuttal.

No. 2, Smith County, Texas. Lyle Smith is the real party in interest.

That's the only way I can figure out that you could get past not giving it to the opposing side . . ." and then went on to say that Usry was a "logical rebuttal witness."

The State then told the court that it wished to make a plea offer to Usry in exchange for his testimony. The State would not put an offer on the record, and the court ordered Usry to meet with the State's attorneys in private without his counsel and discuss their proposal. The State apparently did not make a formal offer to Usry, but did have discussions with him. Following the meeting, Usry testified that he had never before been made an offer by the State, that he did not wish to accept an offer, and that he would assert his Fifth Amendment right not to testify if called as a witness.

At the end of the hearing, the trial court denied the motion to disqualify Smith's counsel. The State filed this application for writ of mandamus, and the trial court stayed the proceedings.

### Conflict of Interest

█ Mandamus relief is appropriate if the relator can demonstrate that the act sought to be compelled is purely ministerial and that the relator has no other adequate remedy by appeal. *State ex rel. Rosenthal v. Poe,* 98 S.W.3d 194, 198 (Tex. Crim.App.2003). The ministerial act requirement is satisfied only if the relator has a "clear right to the relief sought," the relief sought is "clear and absolute," and the merits are beyond dispute so that nothing is left to the exercise of discretion or judgment. *Id.* A ruling on a motion to disqualify counsel is a proper subject for mandamus review. *In re Basco,* 221 S.W.3d 637, 639 (Tex.2007) (orig.proceeding).

As the Supreme Court has recognized, a trial court faced with deciding whether to disqualify a defendant's counsel usually must evaluate the situation in the "murkier pretrial context when relationships between parties are seen through a glass, darkly." *Wheat v. United States,* 486 U.S. 153, 162, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988). The task is further complicated because a defendant whose counsel remains in place may later claim that he received ineffective assistance of counsel, while a defendant whose counsel is removed may complain that his Sixth Amendment right to counsel has been abrogated. *Id.,* 486 U.S. at 161–62, 108 S.Ct. at 1698.

█ The State addresses the first of these concerns when it argues that the trial in its current posture is an "obvious train wreck" because Smith will be able to claim on appeal that his attorney had conflicting loyalties to two clients. The State also argues that it is deprived of its right to a fair trial because counsel's joint representation has prevented it from reaching a plea agreement with Usry or talking with him.

The implicit assumption in these arguments that Usry will be a witness is, we conclude, without basis. Consequently, and for reasons we will explain, we conclude that the trial court did not err. The relevant ethical rules are a guide for a court deciding whether counsel must be disqualified, but they do not purport to provide a disqualification standard. *See In Re EPIC Holdings, Inc.,* 985 S.W.2d 41, 48 (Tex.1998); *see also Gonzalez v. State,* 117 S.W.3d 831, 837–38 (Tex.Crim.App. 2003). And the ethical rules allow for representation of clients with adverse claims or interests if counsel reasonably believes that each client will not be materially affected and if the clients consent. *See* Tex.R. Disciplinary P. 3.06(b), (c), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon Supp.2007) (Tex. State Bar R. art. X, § 9); *see also Ex*

*parte Prejean,* 625 S.W.2d 731, 733 n. 6 (Tex.Crim.App.1981).

Unlike in the *Wheat* case, the trial court here was not called upon to pass on this question before trial. Rather, this issue was raised on at least the second day of trial, and the positions of the parties were well established. An employee of the office of the district attorney asked Usry to come to the courthouse the morning of the disqualification hearing, and he was served with a subpoena to testify in Smith's trial when he arrived. Smith objected to Usry's being called as a witness because he had not been disclosed by the State prior to trial. The trial court never formally ruled on that objection. But the court noted, and the State conceded, that Usry had not been listed as a witness. The trial court agreed with the State that it would be permissible to call Usry absent disclosure if he was an unanticipated rebuttal witness, but appeared to disagree with the State's implicit contention that it could not have reasonably anticipated that Usry would be a rebuttal witness. *See Stoker v. State,* 788 S.W.2d 1, 15 (Tex.

Crim.App.1989) (Whether an undisclosed rebuttal witness was reasonably anticipated is relevant to the question of whether a witness should be excluded.).

Smith had not waived a conflict of interest at trial,[2] and so we think it plain that trial counsel's competing loyalties would make it impossible for him to cross examine his client Usry about whether his client Smith was intoxicated and operating a motor vehicle, the information the State sought to elicit from him. *See Wheat,* 486 U.S. at 164, 108 S.Ct. at 1699; *Glasser v. United States,* 315 U.S. 60, 73, 62 S.Ct. 457, 466, 86 L.Ed. 680 (1942). And counsel would be hopelessly conflicted if called upon to advise one client whether to accept a plea agreement and testify against another. *See, e.g., Holloway v. Arkansas,* 435 U.S. 475, 489–90, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978). Therefore, the trial court's ruling is correct if the trial court had determined it would grant Smith's motion to exclude Usry as a witness.[3] That conclusion is supported by the record, and by the trial court's comments about the matter.

**2.** The State attributes the lack of a waiver to the trial court because the court sustained objections to the State's questions of Smith's counsel about a conflict even though it never sought to ask Smith, or his counsel, questions that it now argues are the appropriate inquiry pursuant to *United States v. Greig,* 967 F.2d 1018, 1022 (5th Cir.1992). The State posits in its brief that "[t]he purpose of the [disqualification] hearing is to ensure that the defendant: (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel." However, the questions to which objections were sustained were whether *counsel* was aware of possible conflicts of interest that could arise in dual representation situations, why he did not believe it was a conflict, if he was aware of the ethical implications that arise from representing two people who may have conflicting interests, and if he was familiar with Rule 1.06.

Smith blames the State, claiming that it "fumbled the hearing." But Smith essentially admits that he had not waived any conflict of interest on the record by attaching to his brief an affidavit waiving a conflict. The procedure for waiving a conflict of interest is well established. *See Ex parte Prejean,* 625 S.W.2d at 733. A trial court is not bound to accept such a waiver. *See Wheat,* 486 U.S. at 163, 108 S.Ct. at 1699. We think the trial court was well aware of this procedure, but did not ask Smith for a waiver because it had decided that Usry would not be a witness.

**3.** Neither party has deduced what we have determined to be a simple syllogism: counsel cannot cross examine Usry; the trial court did not disqualify counsel; therefore the trial court concluded that Usry would not be a witness. We are cognizant that the State's failure to interpret the trial court's ruling as we have means it has not briefed the issue of whether the trial court properly excluded Usry. However, such decisions are committed

If Usry is not to be a witness, Smith's counsel would not be called upon to cross examine him. The State had not offered either man immunity and had not offered Smith a plea agreement in exchange for testimony against Usry.[4] As such, no question of Smith's suffering from the divided loyalties of his counsel is presented on the facts as they appeared at the time the trial court made its ruling.[5] Simply put, Usry's decisions to reject the proposed plea agreement and to assert his Fifth Amendment right not to testify not only inure to Smith's benefit—because those decisions mean Usry would not be a witness against him—but are not relevant if Smith could prevent Usry from being a witness because he was not disclosed prior to trial.

Finally, the State argues that its right to a fair trial is compromised because the State's lawyers cannot talk to Smith or Usry, because they are represented by counsel, and because it has not been able to convince Usry to be a witness against Smith, a turn of events the State attributes to the joint representation of counsel. We agree that the State has a right to a fair trial, but we do not understand that right to go so far as the State would suggest here, and the State offers no authority for its assertions. Furthermore, even if the State had a justiciable interest in talking to Usry, or to offer him a plea agreement, neither question is relevant to the narrow issue here because we have concluded that the trial court decided that Usry could not be called by the State as a witness at Smith's trial.

## CONCLUSION

Because the trial court decided that Usry would not be a witness at Smith's trial, the trial court determined that Smith's counsel did not have a conflict of interest in continuing to represent Smith at the time the State sought to disqualify him. The State has not shown that the court's ruling on its motion to disqualify Smith's counsel is a purely ministerial act or that it has a clear right to the relief sought. The petition for writ of mandamus is ***denied.***

---

to a trial court's discretion, and as such generally would not be appropriate for review by writ of mandamus. On the other hand, if we misperceived the trial court's implicit ruling on the question of whether Usry would be a witness, we think, for the reasons set out above, that it is clear that counsel cannot represent Smith and cross examine Usry unless Smith waives the conflict and the trial court determines that it will accept that waiver.

4. The court in *Wheat* alluded to the potential problem of a party manufacturing a conflict of interest. *Wheat*, 486 U.S. at 163, 108 S.Ct. at 1699. Based on the limited record before us, we cannot conclude that the trial court believed that the State sought to manufacture a conflict of interest in this case.

5. The State also argues that Usry would not receive conflict free counsel because counsel would have to cross examine Smith at Usry's trial. This question does not appear to be ripe, and we express no opinion on it. The State sought to disqualify counsel for Smith's trial, at Smith's trial; and it is that proceeding from which it seeks a writ of mandamus. The State also argues that Usry is poorly served by counsel's not giving him advice as to whether to accept the State's tentative offer to him. As the trials are separate, and since the trial court decided Usry would not be a witness, the trial court could have reasonably concluded that question was not relevant to whether counsel should be disqualified in the middle of Smith's jury trial. *See Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex.1990) ("The courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic.").