COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| IN RE: | § | No. 08-16-00156-CR |
| | § | ORIGINAL PROCEEDING |
| STATE OF TEXAS, | § | ON PETITION FOR WRIT OF |
| RELATOR. | § | |
| | § | MANDAMUS |

## O P I N I O N

The State of Texas has filed a mandamus petition against the Honorable Luis Aguilar, Judge of the 243rd District Court of El Paso County, Texas. The State asks the Court to order Respondent to set aside his order disqualifying Assistant District Attorney Denise Butterworth from the prosecution of a capital murder case against Luis Solis Gonzalez.[1] We conditionally grant the relief requested in the State's petition.

## FACTUAL SUMMARY

Gonzalez is charged with capital murder based on the allegation that he killed three individuals during the same criminal transaction on or about May 30, 2012. The State is seeking the death penalty. The day after the offense, Joe Zimmerly conducted a forensic interview of a four-year-old child who witnessed the offense. Detective Jerome Hinojos and Assistant District Attorney Denise Butterworth observed the interview. Almost four years later, on May 26, 2016,

---

[1] The case is styled *State of Texas v. Luis Solis Gonzalez* (cause number 20120D04103).

Gonzalez filed a motion to disqualify Butterworth on the ground that it is an ethical violation for an attorney to act as an advocate and a witness in the same proceeding. The motion alleges that Butterworth is a potential witness because she observed the interview. In its response to the motion, the State asserted that Butterworth's presence at the interview did not result in a due process violation, and therefore, she could not be disqualified.

At the hearing on the motion, Butterworth testified that she was called out to the child-advocacy center on May 31, 2012 to observe the forensic interview of a child witness. It was Butterworth's practice to speak with the interviewer prior to the interview, and although she could not recall that she spoke with Zimmerly prior to the interview, she assumed that she had done so. At the time of the interview, Butterworth did not have any knowledge of the investigation because it was unfolding, and she would not have been able to provide any information to Zimmerly. Butterworth and Detective Hinojos observed the entire interview from an adjacent room where they could not be seen by the witness. Butterworth, who does not speak Spanish, noted that the majority of the interview was conducted in Spanish. Nevertheless, Butterworth had an opportunity to observe the child's demeanor and she formed an opinion regarding the child's credibility. At one point in the interview, Zimmerly took a break and exited the interview room. During this break, Zimmerly spoke with both Butterworth and Hinojos before resuming the interview. Butterworth did not go to the crime scene, and she did not recall being present when the child's clothes were collected.

Butterworth also testified that the standard protocol required that a child be interviewed only once. Under the protocol, a prosecutor and a detective are present to observe the interview from behind the two-way glass as was done in this case. The prosecutor and detective are present to ensure that all necessary questions are asked during this single interview. Butterworth

did not speak to the child, and the child did not see or speak to her. Further, Butterworth was not communicating with Zimmerly as he was conducting the interview.

Joe Zimmerly also testified at the hearing. When asked if a prosecutor typically gives the interviewer background information prior to the interview, Zimmerly stated that the investigating agencies typically give the interviewer "whatever information they have at that point." Zimmerly referred to this exchange of information as "staff[ing] the case." Defense counsel also asked Zimmerly if there was a way for him to communicate with the prosecutor who was observing the interview. Zimmerly replied that he usually took a break when he was about two-thirds of the way through the interview and he would ask the investigators, and the prosecutor if one was present, whether he had missed anything.

Detective Jerome Hinojos testified that he was assigned to observe the forensic interview of the child witness. Hinojos gave Zimmerly an overview of the case prior to the interview. Hinojos recalled that Butterworth was present during the interview, but he did not remember whether she was present when he gave Zimmerly the overview of the case. The interview was conducted in both Spanish and English, and Hinojos translated pertinent portions of the child's statements for Butterworth while they were observing the interview. In Hinojos' opinion, the child did not understand the difference between the truth and a lie, and he appeared to "lose focus" during the interview. Zimmerly took a break during the interview and asked Hinojos and Butterworth whether he needed to ask any other questions, but nothing else was covered after the break.

Officer Martin Martinez photographed the child-witness and collected clothing from him at the child advocacy center. Martinez collected a buccal swab from the child at the police station. He was not present during the interview of the child, and Martinez did not recall seeing

Butterworth when he was collecting the child's clothing at the child advocacy center.

At the conclusion of the hearing, Respondent granted the motion to disqualify Butterworth. Respondent subsequently made written findings of fact and conclusions of law. Respondent found that Butterworth was present for the staffing of the case and when Zimmerly took a break to ask those present whether he needed to cover anything else. He also found that she was "indirectly actively involved in the interview . . . ." In his conclusions of law, Respondent stated that Gonzalez's due process rights would be actually prejudiced by Butterworth serving as counsel for the State "given her role as an active witness to the interview . . . ."

## THE STANDARD OF REVIEW

To be entitled to mandamus relief, the relator must make two showings: (1) that he has no adequate remedy at law; and (2) that what he seeks to compel is a ministerial act. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex.Crim.App. 2013); *see In re State of Texas*, 162 S.W.3d 672, 675 (Tex.App.--El Paso 2005, orig. proceeding). The ministerial act requirement is satisfied if the relator can show a clear right to the relief sought. *Weeks*, 391 S.W.3d at 122. A clear right to relief is shown when the facts and circumstances dictate but one rational decision "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Id., quoting Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex.Crim.App. 2011).

## DISQUALIFICATION OF THE PROSECUTOR

It is well established that a trial court has limited authority to disqualify an elected district attorney and his staff from the prosecution of a criminal case. *Buntion v. State*, 482 S.W.3d 58, 76 (Tex.Crim.App. 2016). The office of a district attorney is constitutionally created and

protected. *Buntion*, 482 S.W.3d at 76; *Landers v. State*, 256 S.W.3d 295, 303-04 (Tex.Crim.App. 2008); TEX.CONST. art. V, § 21; *see also State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 4 (Tex.Crim.App. 1990). Consequently, the district attorney's authority "cannot be abridged or taken away." *Buntion*, 482 S.W.3d at 76, *quoting Landers*, 256 S.W.3d at 303-04. A district attorney and the assistant district attorneys are responsible for recusing themselves in a particular case to avoid conflicts of interest and the appearance of impropriety. *Buntion*, 482 S.W.3d at 76; *see Coleman v. State*, 246 S.W.3d 76, 81 (Tex.Crim.App. 2008); *State ex rel. Eidson*, 793 S.W.2d at 5.

Gonzalez asserted in the trial court that Butterworth should be disqualified on the ground that it is an ethical violation for an attorney to act as an advocate and a witness in the same proceeding. In support of this argument, he cited Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct which generally prohibits a lawyer from being an advocate before a tribunal if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client. TEX.DISCIPLINARY R. PROFESSIONAL CONDUCT 3.08, *reprinted in* TEX.GOV'T CODE ANN. tit. 2, subtit. G, app. A (West 2013 & Supp. 2016).

Showing a violation of the disciplinary rules is insufficient in itself to compel the disqualification of a district attorney or assistant district attorney. *Buntion*, 482 S.W.3d at 76; *Martinez v. State*, No. 08-14-00130-CR, 2016 WL 4447660, at *6 (Tex.App.--El Paso August 24, 2016, pet. ref'd). The defendant must go further and show actual prejudice rising to the level of a due process violation. *See Landers*, 256 S.W.3d at 304-05. In this context, actual prejudice requires that the defendant show that the alleged disciplinary rule violation would deprive him of a fair trial or otherwise affect his substantial rights. *See Martinez*, 2016 WL 4447660, at *6,

*citing House v. State*, 947 S.W.2d 251, 253 (Tex.Crim.App. 1997). Further, the party seeking disqualification cannot invent the necessary prejudice by unnecessarily calling the opposing counsel as a witness. *Martinez*, 2016 WL 4447660, at *6, *citing Gonzalez v. State*, 117 S.W.3d 831, 837 (Tex.Crim.App. 2003).

In his written conclusions of law, Respondent cited the Court of Criminal Appeals' decision in *Gonzalez* to support his decision to disqualify Butterworth. In that case, the defendant and several co-defendants were charged with engaging in organized criminal activity based on allegations that the group stole more than $200,000 in an insurance fraud scheme involving staged automobile accidents. *Gonzalez*, 117 S.W.3d at 835. The defendant, Alfonzo Gonzalez (Alfonzo), was a physician who treated persons purported injured in the staged accidents. *Id.* The State's key witness, Percy Gonzalez (Percy), was a participant in the scheme, and he later took a job at Alfonzo's clinic generating phony medical narratives and bills under Ralph's supervision. *Id.* Alfonzo discussed with Percy the financial arrangements he had with another co-defendant. *Id.* After he and Alfonzo were indicted, Percy had several telephone conversations and two meetings with Ralph Gonzalez, who is Alfonzo's attorney. *Id.* During these meetings and conversations, it was agreed that Alfonzo would pay Percy $10,000, but the reason for the payment was disputed. *Id.* Alfonzo paid $3,000 to Percy, but he refused to pay the remaining $7,000. *Id.*

The State apparently learned of this payment arrangement and it sought to disqualify Attorney Gonzalez based on Disciplinary Rule 3.08 because counsel had personal knowledge directly bearing on the guilty or innocence of his client and the credibility of the State's key witness. *Gonzalez*, 117 S.W.3d at 835. The State argued that defense counsel was a potential witness in the case and the attorney's dual rules of advocate and witness would confuse the jury.

- 6 -

*Gonzalez*, 117 S.W.3d at 835. At the hearing on the motion to disqualify, Percy testified that the payment was an attempt to buy testimony favorable to Alfonzo. *Id.* Attorney Gonzalez claimed that the initial payment was given to Percy out of an effort to help him, but Percy threatened to testify unfavorably to Alfonzo unless he was paid the additional $7,000. *Id.* Defense counsel also testified at the hearing on the motion to disqualify. *Id.* at 842.

The trial court disqualified defense counsel, and the Court of Criminal Appeals upheld that decision because the record showed that defense counsel had personal knowledge of, and was actually involved in, the potential witness tampering. *Gonzalez*, 117 S.W.3d at 844-45. The Court of Criminal Appeals observed that the record showed the State intended to introduce evidence about which defense counsel had personal knowledge, and defense counsel testified that he intended to impeach the State's witness with tape recordings or transcripts of some of the conversations counsel had with the witness. *Id.* at 843. The Court concluded it would be apparent to the jury that the attorney had personal knowledge of the events which conflicted with the witness's testimony. *Id.* at 842-43. Consequently, defense counsel's credibility would be an issue in the case and the jury could interpret his questions and arguments related to the issue as the equivalent of unsworn testimony. *Id.* at 841-46.

The facts of this case are not close to *Gonzalez*. When the record is read in the light most favorable to the trial court's ruling, the evidence showed that Butterworth did nothing more than be present for the staffing of the case prior to the interview, observe the forensic interview of the child witness from another room, and be present when the interviewer asked whether he needed to cover anything else with the child. Assuming for the sake of argument that the child witness testifies at trial inconsistent with his recorded statement, he can be impeached with the video recording of the interview, and by the testimony of the interviewer and Detective Hinojos.

Gonzalez failed to show that Butterworth will be a necessary witness to any issue in the case, including the credibility of the child witness. Butterworth's presence at the interview and limited participation do not amount to a violation of Rule 3.08, and it does not result in actual prejudice rising to the level of a due process violation. Under Gonzalez's interpretation of Rule 3.08, a prosecutor could not interview witnesses while preparing for trial without running afoul of this rule. This has never been the law in Texas. We conclude that Respondent clearly abused his discretion by granting the motion to disqualify Butterworth. Accordingly, we sustain the issue presented in the State's mandamus petition and conditionally grant mandamus relief. The trial court is directed to withdraw the order disqualifying Butterworth from the prosecution of the case. The writ will issue only if Respondent fails to comply.

November 30, 2016

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)