ACCEPTED
01-14-00900-cr
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/13/2015 11:18:48 AM
CHRISTOPHER PRINE
CLERK

## No. 01-14-00900-CR

In the
Court of Appeals
For the
First Judicial District of Texas
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

5/13/2015 11:18:48 AM

CHRISTOPHER A. PRINE
Clerk

———————◆———————

## No. 1344231

In the 180th District Court of
Harris County, Texas

———————◆———————

## FELICITY BURRIS
*Appellant*
v.
## THE STATE OF TEXAS
*Appellee*

———————◆———————

STATE'S APPELLATE BRIEF

———————◆———————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**CARLY DESSAUER**
Assistant District Attorney

**WILLIAM T. EXLEY, JR.**
Assistant District Attorney

Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
Tel.:  713/755-5826
Fax No.:  713/755-5809

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, the State requests oral argument only if appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

Counsel for the State:

**Devon Anderson** — District Attorney of Harris County

**Carly Dessauer** — Assistant District Attorney on appeal

**William T. Exley, Jr.** — Assistant District Attorney at trial

Appellant or criminal defendant:

**Felicity Burris**

Counsel for Appellant:

**Tommy LaFon** — Attorney at trial and on appeal

Trial Judge:

**Hon. Catherine Evans**

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...................................................... ii

IDENTIFICATION OF THE PARTIES ......................................................................... ii

TABLE OF AUTHORITIES ....................................................................................... iv

STATEMENT OF THE CASE ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 1

SUMMARY OF THE ARGUMENT ............................................................................ 3

REPLY TO APPELLANT'S POINT OF ERROR ........................................................ 4

I.  The trial court did not abuse its discretion when ordering appellant to pay $12,146 in restitution to the complainant for the costs of demolishing the catastrophically destroyed building. ............................................................... 4

    a.  Trial court did not abuse its discretion when it included the cost of demolishing the building because the costs were supported by the record. ........................................................................................................... 7

    b.  The trial court did not abuse its discretion in ordering appellant to pay restitution for the structure's demolition even though it had not occurred because the record established that the complainant would incurr the cost. ........................................................................................... 8

    c.  The trial court did not abuse its discretion in assessing the cost of demolishing the remaining structure because its order was just. ........................ 10

CONCLUSION .......................................................................................................... 13

CERTIFICATE OF COMPLIANCE ......................................................................... 14

CERTIFICATE OF SERVICE ................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Cabla v. State*,
  6 S.W.3d 543 (Tex. Crim. App. 1999) ................................................................. 5

*Campbell v. State*,
  5 S.W.3d 693 (Tex. Crim. App. 1999) ................................................................5, 6, 7, 11

*Cantrell v. State*,
  75 S.W.3d 503 (Tex. App.—Texarkana 2002, pet. ref'd)................................... 5

*Cartwright v. State*,
  605 S.W.2d 287 (Tex. Crim. App. 1980) ............................................................ 4

*Drilling v. State*,
  134 S.W.3d 468 (Tex. App.—Waco 2004, no pet.) ............................................4, 5, 7

*Gonzalez v. State*,
  117 S.W.3d 831 (Tex. Crim. App. 2003) ............................................................ 4

*LaFleur v. State*,
  848 S.W.2d 266 (Tex. App.—Beaumont 1993, no pet.) ..................................... 10

*Lemos v. State*,
  27 S.W.3d 42 (Tex. App.—San Antonio 2000, pet. ref'd) .................................. 10

*Simpson v. State*,
  772 S.W.2d 276 (Tex. App.—Amarillo 1989, no pet.) ........................................ 10

**STATUTES**

TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (West Supp. 2014)..................................... 5

TEX. CODE CRIM. PROC. ANN. art. 42.037(b)(1)(B) (West Supp. 2014) ......................... 6

TEX. CODE CRIM. PROC. ANN. art. 42.037(c) (West Supp. 2014) ................................6, 9

TEX. CODE CRIM. PROC. ANN. art. 42.037(e) (West Supp. 2014) ..............................6, 11

TEX. CODE CRIM. PROC. ANN. art. 42.037(h) (West Supp. 2014) ................................... 5

TEX. CODE CRIM. PROC. ANN. art. 42.037(k) (West Supp. 2014) ................................... 6

TEX. CODE CRIM. PROC. ANN. art. 42.12, §11(b) (West Supp. 2014) ............................. 5

TEX. PENAL CODE ANN. §28.02(a) (West 2011) ............................................................. 5

**RULES**

TEX. R. APP. P. 9.4(g) ........................................................................................ ii

TEX. R. APP. P. 9.4(i). ....................................................................................... 14

TEX. R. APP. P. 38.2(a)(1)(A) ............................................................................ ii

TEX. R. APP. P. 39.1 .......................................................................................... ii

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged with arson (CR at 16). She entered a plea of no contest (CR at 46-48, 53-54). The trial court deferred appellant's adjudication and placed her on community supervision for five years (CR at 53-54). Appellant was ordered to pay $25,851 in restitution as an amended condition of her community supervision (1 RR at 68; CR at 56). The court certified appellant's right to appeal its restitution order, and appellant filed a timely notice of appeal (CR at 63-64).

## STATEMENT OF FACTS

Appellant pleaded no contest to arson and accepted a plea agreement with the State that capped her punishment at five years deferred adjudication (CR at 46-47). The trial court accepted this agreement, and placed appellant on community supervision for five years (CR at 53-54).

The trial court held a hearing to determine the amount of restitution appellant should pay as a condition of her community supervision (1 RR). James Zoe, the son of the complainant, testified at the hearing and informed the court that the building on the property from which appellant operated her business, Late Nite Pies, was catastrophically destroyed by the arson (1 RR at 8, 9, 11, 12). The building could not be occupied or used since the fire (1 RR at 12-13). The building had been gutted by the fire, and while the exterior walls were standing, they were cracked (1 RR at 13).

1

James testified that the exterior walls "cannot be used for a future building" and noted that there was "no way" to use them (1 RR at 13).

After the fire, the complainant had to pay $2,200 for cleaning up debris, $1,000 for securing the building in accordance with requirements of the City of Houston, $200 for locks to secure the property, and $1,450 for boarding up the building (1 RR at 15-18). At the time of trial, the building had not yet been torn down because the complainant was gathering information regarding what to do with the property, and James found it cheaper to maintain the boarded up structure than it would have been to take care of an empty lot (1 RR at 46-47). However, James had obtained a quote from a demolition company regarding what it would cost to take down the gutted structure, $12,146, and testified that he was certain "without a doubt" that the building would have to be demolished (1 RR at 18-19).

Since the building had been catastrophically destroyed by the fire, the loss was covered by a $250,000 insurance policy (1 RR at 20). However, the insurance company deducted $8,855 to cover the costs that the company paid directly to the Houston Police Department for securing the building after the fire before sending the remaining amount, $241,145, to the complainant (1 RR at 23-24). However, the complainant had to pay income taxes for over $68,000 on the insurance proceeds as the structure was a complete loss (1 RR at 26, 28, 29, 34, 35-36).

James testified that if the complainant would have sold the property as it was before the fire, he expected the market value to be a lot more than $250,000, but due

2

to the difference between market value and the depreciation of the building, which had been built in the 1920s, the most money the complainant could get from an insurance policy was $250,000 (1 RR at 22, 37). The value of the land had increased since the fire, but had the building not been a total loss from the fire, the property would have been worth even more with the intact building (1 RR at 38, 39).

Also at the hearing, appellant provided the trial court with two affidavits attesting to her financial situation and a third mentioning her health problems (1 RR at 57; Def. Ex. 1, 2, 3). In her own affidavit, appellant informed the court that she was going through bankruptcy proceedings (Def. Ex. 1).

After hearing this evidence, the trial court ordered appellant to pay $25,851 in restitution based on the facts that the complainant had to pay $2,200 for cleaning up debris from public property, $1,000 for securing the building after the fire in accordance with requirements of the City of Houston, $200 for locks to secure the property, $1,450 for boarding up the building after the fire, $12,146 for demolishing the damaged walls, and $8,855 for the costs of the Houston Police Department securing the smoldering property immediately after the arson (1 RR at 67-68, 78).

## SUMMARY OF THE ARGUMENT

The trial court did not abuse its discretion when including the cost of demolishing the remains of the catastrophically destroyed building in the amount of restitution appellant should pay as a condition of her community supervision because

3

the record factually established the amount and need for the cost and the trial court's restitution order was just.

## REPLY TO APPELLANT'S POINT OF ERROR

**I.   The trial court did not abuse its discretion when ordering appellant to pay $12,146 in restitution to the complainant for the costs of demolishing the catastrophically destroyed building.**

The trial court did not abuse its discretion when including $12,146 for the cost of demolishing the destroyed structure in the amount of restitution appellant has to pay as a condition of her community supervision.  The amount and need for the cost was supported by the record, as was evidence regarding appellant's inability to pay the actual loss sustained by the complainant because of the arson.  Because the trial court did not abuse its discretion, the court's restitution order should be upheld.

### *Standard of Review*

Challenges to restitution orders are reviewed under an abuse-of-discretion standard.  *Cartwright v. State*, 605 S.W.2d 287, 288-89 (Tex. Crim. App. 1980); *Drilling v. State*, 134 S.W.3d 468, 469 (Tex. App.—Waco 2004, no pet.).  An abuse of discretion occurs when a trial court's decision is so clearly wrong that it lies outside the "zone of reasonable disagreement."  *Gonzalez v. State*, 117 S.W.3d 831, 839 (Tex. Crim. App. 2003); *Drilling*, 134 S.W.3d at 469-70.

A trial court is given broad discretion when granting restitution.  *Drilling*, 134 S.W.3d at 470.  However, due process requires three restrictions on the restitution a

4

trial court may order: (1) the amount must be just and supported by a factual basis within the record, (2) the restitution ordered must be only for the offense for which the defendant is criminally responsible, and (3) the restitution ordered must be proper only for the victim or victims of the offense with which the offender is charged. *Campbell v. State*, 5 S.W.3d 693, 696-97 (Tex. Crim. App. 1999); *Drilling*, 134 S.W.3d at 469-70; *Cantrell v. State*, 75 S.W.3d 503, 512 (Tex. App.—Texarkana 2002, pet. ref'd); *see Cabla v. State*, 6 S.W.3d 543, 546 (Tex. Crim. App. 1999).

### Applicable Law

A person commits the offense of arson if she starts a fire with the intent to destroy or damage the property of another either with the knowledge that the fire is located on property belonging to another or that the fire has located within it property belonging to another. TEX. PENAL CODE ANN. §28.02(a) (West 2011).

Article 42.037(a) of the Code of Criminal Procedure allows the trial court that sentences a defendant to an offense to order that defendant to make restitution to the victim of the offense. TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (West Supp. 2014). The court may also impose upon a defendant placed on community supervision the requirement that the defendant pay restitution. TEX. CODE CRIM. PROC. ANN. art. 42.037(h) (West Supp. 2014); TEX. CODE CRIM. PROC. ANN. art. 42.12, §11(b) (West Supp. 2014).

When a court determines the amount of restitution, the State bears the burden of demonstrating the amount of loss sustained by the victim as a result of the offense

5

while the defendant has the burden of demonstrating her financial resources, financial needs, and dependents. TEX. CODE CRIM. PROC. ANN. art. 42.037(k) (West Supp. 2014). In determining the amount of restitution, the court must consider "the amount of loss sustained by any victim" and "other factors the court deems appropriate." TEX. CODE CRIM. PROC. ANN. art. 42.037(c) (West Supp. 2014). When the court calculates the amount of restitution for an offense that resulted in the damage or destruction of property that is impossible to return, the court may order the defendant to pay the value of the property on the date of the destruction, or the value of the property on the date of sentencing, less the value of any part of the property that is returned. TEX. CODE CRIM. PROC. ANN. art. 42.037(b)(1)(B) (West Supp. 2014). The court's order of restitution must be "as fair as possible to the victim" of the defendant's offense but also must be "just." TEX. CODE CRIM. PROC. ANN. art. 42.037(e) (West Supp. 2014); *Campbell*, 5 S.W.3d at 696.

## Analysis

The trial court did not err when it included the cost of demolition for the destroyed structure in the amount of restitution appellant had to pay as a condition of her community supervision even though the complainant had not yet paid that cost because the amount and need for the cost was factually supported by the record. As the trial court ordered appellant to pay limited amount of restitution for the complainant's expenses directly arising out of appellant's offense of arson, the trial court did not abuse its discretion.

6

**a. Trial court did not abuse its discretion when it included the cost of demolishing the building because the costs were supported by the record.**

Firstly, the amount of restitution the court ordered appellant to pay for the cost of demolishing the burnt building was factually supported by the record. *See Campbell*, 5 S.W.3d at 696; *Drilling*, 134 S.W.3d at 469-70. As the record shows, the $12,146 for demolition costs was discussed during James testimony as well as documented in State's Exhibit 3 (1 RR at 18-19; State's Ex. 3). James testified that Cherry Demolition had provided an estimate for the costs of tearing down the exterior walls, removing the debris, and clearing the lot (1 RR at 18-19). James informed the trial court that the estimate was lower than he expected to get if he obtained a new estimate at the time of the hearing but assured the court that he expected the destroyed structure to be demolished "[w]ithout a doubt" (1 RR at 19).

Indeed, in his other testimony, James described how the building was "destroyed," "gutted," and was "a catastrophic loss;" he explained to the court how the complainant was only able to rent the parking lot of the property because the building was unusable in its current state (1 RR at 12-13, 36, 37, 43, 46). While James testified that the four walls of the building were standing, he told the court that they were cracked, that they "could not be used for a future building," and that there was "no way to use those walls" (1 RR at 13). James acknowledged that the decision regarding what to do with the building had not yet been made, but his testimony

7

made clear that the complainant faced a choice between clearing the property of the destroyed building alone or rebuilding a new building on the property which would also require demolition of the existing structure (1 RR at 13, 18-19, 42, 46).

Because the record established that the complainant would have to pay to demolish the remaining walls and documented that the cost for that work would be at least $12,146, the trial court did not abuse its discretion in assessing appellant with a condition of community supervision that included paying $12,146 in restitution for the cost of demolition that was supported by the record. As the amount was factually supported by the record, the trial court did not abuse its discretion.

**b. The trial court did not abuse its discretion in ordering appellant to pay restitution for the structure's demolition even though it had not occurred because the record established that the complainant would incur the cost.**

Secondly, despite the fact that the cost of demolition was factually supported by the record, appellant points to the fact that the demolition—and its expense—had not yet occurred and to James' testimony that the complainant was carefully considering what to do with the structure given that the building had been grandfathered out of new code restrictions as reasons for why the trial court abused its discretion (1 RR at 18-19, 47). Appellant claims that since this cost had not yet occurred, it was not a loss and the trial court unjustly enriched the complainant by ordering appellant to cover the cost. However, in making this argument, appellant

overlooks the evidence in the record supporting the trial court's ruling that the costs would be incurred.

Mentioned above, the court heard James explain that the walls of the structure were cracked and "could not be used for a future building" because of the fire (1 RR at 13). He asserted that the demolition costs would eventually occur "without a doubt" (1 RR at 19). James further testified that while the demolition had not occurred because the complainant was exploring what to do with the property, "a new building will be put up. It is just we are not sure of what options we have, so we are trying to get these options and then make logical decisions and go forward" (1 RR at 47). Given his testimony, the trial court did not abuse its discretion in determining that the work would occur. Indeed, the trial court even stated on the record that it believed that "the demolition work is a direct consequence of the arson. It is just like if somebody broke a window getting into a house, whether you sweep it up now or eventually, it has to be done" (1 RR at 67). Even though complainant had not yet paid the cost, it was certain that the complainant would have to pay for the gutted structure to be demolished for at least $12,146. Thus, the trial court did not abuse its discretion in including the amount in its restitution order.

Additionally, the trial court did not err in ordering appellant to pay restitution for a cost that had not yet been incurred by the complainant as other courts have assessed such "future costs" in their restitution orders. For example, the Forth Court of Appeals upheld a trial court's restitution order requiring the defendant to

9

"[s]ubsidize the decedent's family due to loss of income" for a total of $21,205. *Lemos v. State*, 27 S.W.3d 42, 49 (Tex. App.—San Antonio 2000, pet. ref'd). The Court in *Lemos* stated that "the lost earnings of the [complainant] were a proper subject of the restitution order. *Lemos*, 27 S.W.3d at 49; *see also LaFleur v. State*, 848 S.W.2d 266, 268 (Tex. App.—Beaumont 1993, no pet.) (noting that the court ordered LaFleur to pay for the present and future medical expenses incurred by a victim connected to his offense; however, the issue of whether the future medical expenses were factually supported by the record was not raised directly on appeal). Similarly, in *Simpson v. State*, the Seventh Court noted that the trial court was within its discretion to order the defendant to pay restitution for the complainant's future psychological counseling and medical costs if supported by the record. *Simpson v. State*, 772 S.W.2d 276, 279-80 (Tex. App.—Amarillo 1989, no pet.). However, as the record did not provide any factual support for the amount of restitution set by the court, the Seventh Court deleted the amount from Simpson's restitution order. *Simpson*, 772 S.W.2d at 280. This case is distinguishable from *Simpson* in that the amount of restitution the court ordered appellant to pay is supported in the record. As such the trial court did not abuse its discretion.

**c. The trial court did not abuse its discretion in assessing the cost of demolishing the remaining structure because its order was just.**

Finally, the trial court did not abuse its discretion in ordering appellant to pay restitution that included the cost of tearing down the remaining structure destroyed by

the fire because the amount of restitution was just to both the complainant and appellant. *See Campbell*, 5 S.W.3d at 696 ("The amount of restitution must be just."). As the court's restitution order must be "as fair as possible to the victim" of the offense, the court included all of the direct costs arising out of appellant's offense. *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(e) (West Supp. 2014). However, the trial court did not require appellant to pay an amount close to the value of the building before it was destroyed by her arson. *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(b)(1)(B) (West Supp. 2014) ("If the offense results in [the] destruction of property of a victim of the offense, the court may order the defendant […] to pay an amount equal to the greater of the value of the property on the date of the […] destruction."). Despite testimony from James that the building would have been worth well over $250,000 before the fire and informing the trial court of the substantial amount of income tax the complainant had to pay because the building was catastrophically destroyed by the fire, the trial court ordered appellant to pay a fraction of its vale in restitution (1 RR at 22, 26, 27, 37). While not explicitly stated on the record, the trial court may have considered the evidence appellant presented regarding her financial situation and her dependent when ordering appellant to pay the lowest amount of restitution for the loss sustained by the complainant (Def. Ex. 1). Indeed, the court acknowledged at the conclusion of the hearing that appellant's restitution was minimal for her offense when the court told appellant, "to be on deferred for arson for torching somebody's building and having a restitution amount

11

of $25,000, is quite low" (1 RR at 68). The court's words may indicate that it wanted appellant to be aware that her restitution order was minimal in light of the loss suffered by the complainant. With appellant paying $12,146 in restitution for the cost of tearing down the remaining burnt structure instead of an amount near the value of the building, the trial court did not abuse its discretion in ordering a just amount. Furthermore, its restitution order would not cause the complainant, who lost a building worth well over the $250,000, to be unjustifiably enriched by having the expense of the building's demolition covered by appellant's restitution.

Because the trial court's restitution order justly covers the complainant's direct expenses but yet indicates that the court considered the evidence introduced at the hearing that put into question appellant's ability to pay a substantial amount, the trial court did not abuse its discretion. As such, this Court should uphold its restitution order and overrule appellant's sole point of error.

## CONCLUSION

The State of Texas respectfully urges the Court to overrule appellant's point of error and affirm the trial court's restitution order.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ *Carly Dessauer*

**CARLY DESSAUER**
Assistant District Attorney
Harris County, Texas
 1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24069083
dessauer_carly@dao.hctx.net
curry_alan@dao.hctx.net

13

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 3,089 words, based upon the representation provided by the word processing program that was used to create the document. TEX. R. APP. P. 9.4(i).

/s/ *Carly Dessauer*

**CARLY DESSAUER**
Assistant District Attorney
Harris County, Texas
 1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24069083

14

## CERTIFICATE OF SERVICE

The State will serve a copy of the foregoing instrument to appellant's attorney

though TexFile:

Tommy LaFon
Attorney at Law
1244 Heights Blvd.
Houston, Texas 77008
tomlafon@aol.com

/s/ *Carly Dessauer*

**CARLY DESSAUER**
Assistant District Attorney
Harris County, Texas
 1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24069083

Date:  May 13, 2015