

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00034-CR

David **RODRIGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR8655
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Rebeca C. Martinez, Justice
               Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  June 17, 2015

AFFIRMED

Appellant David Rodriguez was convicted by a jury of two counts of murder. After making an affirmative finding that the vehicle used during the offense was a deadly weapon, the jury assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Rodriguez raises two issues on appeal: (1) the trial court erred in failing to grant his motion to dismiss his appointed counsel, and (2) it erred in allowing the State to solicit witness testimony calling for legal conclusions. We affirm the trial court's judgment.

**FACTUAL BACKGROUND**

On September 19, 2012, undercover narcotics officers were surveilling a residence under suspicion of illegal drug activity. Rodriguez drove away from the residence in a black Chevrolet Suburban. San Antonio Police Officer Kimberly Kory initiated a traffic stop based on Rodriguez's failure to signal a lane change. Rodriguez failed to stop and a high-speed chase ensued.

Officer Kory testified Rodriguez drove through two stop signs without slowing and then sped onto Interstate 35. She discontinued the chase when she determined that because of Rodriguez's high speed, the heavy traffic, and his weaving in and out of traffic, she was unable to safely continue pursuit. When Officer Kory saw Rodriguez's vehicle again, he had exited the highway and was on the access road. She saw him twice lose control of his vehicle and spin around. As Officer Kory was driving southbound on the two-lane access road, Rodriguez drove northbound in the southbound lane. Officer Kory swerved out of the southbound lane to avoid being hit by Rodriguez's vehicle, and Rodriguez sped by. As Rodriguez's vehicle crested a hill—in the wrong lane, at an excessive rate of speed—he slammed head-on into a Volvo station wagon. As a result of the impact, two young children riding in the station wagon were killed.

The evidence showed Rodriguez never applied his brakes. When officers inspected Rodriguez's vehicle, they discovered approximately 400 pounds of marijuana. The jury found Rodriguez guilty of murder and assessed punishment at life imprisonment, and this appeal ensued.

**RIGHT TO COUNSEL**

Moments before voir dire was to begin, Rodriguez requested permission to speak to the trial court. He made an oral request for new appointed counsel and reminded the judge that he had submitted several motions by mail to dismiss one of his two court-appointed trial counsel. Orally, Rodriguez claimed to have lost faith and confidence in both his appointed attorneys. One of his

appointed counsel requested permission to withdraw from the case. Rodriguez's motions to dismiss his counsel and counsel's motion to withdraw were denied.

## A. Arguments of the Parties

Rodriguez contends the trial court erred in denying his motion to dismiss his trial counsel and thus denied him a fair trial, the right to effective counsel, and due process and equal protection of the United States and Texas Constitutions.

The State counters that Rodriguez failed to present a reason to the trial court that warranted a hearing on his request to dismiss his counsel.

## B. Standard of Review

A trial court's unreasonable or arbitrary interference with a defendant's right to choose counsel amounts to a violation of the defendant's Sixth Amendment rights. *Gonzalez v. State*, 117 S.W.3d 831, 837 (Tex. Crim. App. 2003). As long as the trial court's decision on a motion to dismiss appointed counsel falls within the "zone of reasonable disagreement," the trial court does not abuse its discretion and we will uphold the ruling. *Id*. at 839; *Hobbs v. State*, 359 S.W.3d 919, 926 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Johnson v. State*, 352 S.W.3d 224, 227 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). In determining whether the trial court abused its discretion, "we may only consider the information presented to the trial court at the time of its decision." *Johnson*, 352 S.W.3d at 227–28; *accord Stephenson v. State*, 255 S.W.3d 652, 655 (Tex. App.—Fort Worth 2008, pet. ref'd).

## C. Right to Counsel

A defendant's right to have assistance of counsel during a criminal proceeding is guaranteed by both the Texas and United States Constitutions. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also* TEX. CODE CRIM. PROC. ANN. art. 1.051(a) (West Supp. 2014) ("A defendant in a criminal matter is entitled to be represented by counsel in an adversarial judicial

proceeding."). The right to the assistance of counsel includes the defendant's right to obtain that assistance from retained counsel of his choosing. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *Gonzalez*, 117 S.W.3d at 836–37; *see also Powell v. Alabama*, 287 U.S. 45, 53 (1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."); *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex. Crim. App. 1981) (stating that right to assistance of counsel, "of course, includes freedom of choice in the selection of counsel by the accused").

A defendant's right, however, is not absolute. *Gonzalez*, 117 S.W.3d at 837. "[W]hile there is a strong presumption in favor of a defendant's right to retain counsel of choice, this presumption may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice." *Id*. Among other things, "a trial court [has] wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 151–52, 158 (citations omitted); *accord Martinez v. State*, No. 01-12-00892-CR, 2014 WL 1912544, at \*4 (Tex. App.—Houston [1st Dist.] May 13, 2014, no pet.) (mem. op., not designated for publication); *see also Gonzalez-Lopez*, 548 U.S. at 151 ("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice . . . . [T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." (citation omitted)); *Trammel v. State*, 287 S.W.3d 336, 342–43 (Tex. App.—Fort Worth 2009, no pet.) (same). Yet, in conducting our analysis, we remain mindful of the Court of Criminal Appeals' admonishment that "courts must exercise caution in disqualifying defense attorneys, especially if less serious means would adequately protect the government's interests." *Gonzalez*, 117 S.W.3d at 837.

**D.** **Trial Court Proceedings**

With the venire waiting outside the courtroom, at Rodriguez's request, the parties approached the bench and Rodriguez addressed the court.

Rodriguez: I'm having problems, yeah, with my counsel just all around. And I tried to address you with it the last time, but she wasn't here to hand you the motion to dismiss appointed counsel.

Trial Court: Well, actually I got one in the mail.

Rodriguez: Oh, okay.

Trial Court: So I did review that. And it was, you know, denied because it is a—as we discussed last time, you've got appointed lawyers. You're welcome to hire any lawyer you want to hire, but it's too late to do that at this point because we're picking a jury. But I did get that in the mail.

Rodriguez: But I—I'm telling her I'm not ready and she's just totally ignoring me. She—they're—they're—I—I have reasons here why, you know, that I would just like to go over them with you before we start this because I—I'm totally—I don't trust their counsel at all. I mean, we were going over some things and—and she—she hasn't really reviewed the case at all. I mean, she—she didn't know—

Trial Court: Well, we don't want to go into trial strategy. And, you know, they're a little concerned about you talking about matters concerning the case in front of the DA's office who's going to be prosecuting you and I think that's extremely wise.

So let me go ahead and I'll step in the back and she can make whatever record she wants outside of my presence and we'll ask the—the DA's office to take a break while we're waiting for the shuffled panel to come up.

Rodriguez: And—and who would I talk to this to about—about the—I—I really want to get it—I mean, there's nothing about the case—

Trial Court: You know, again, I've gotten things from you that are in the court's file. You're welcome to continue to put them in writing and they'll be filed of record with the other matters but, as I said, you're not entitled to dual representation so I'm not going to rule on those matters at this point.

Rodriguez: Okay. Well, can I have her file some motions that I prepared? I mean, she hasn't—she—

Trial Court: As I said, you can file anything you want—

Rodriguez: Okay. She hasn't filed it.

Trial Court:    —but you're only entitled to one lawyer, one representation.

Rodriguez:      And I want to file it.

Trial Court:    One representation.

Rodriguez:      Okay.

Trial Court:    So, go ahead and file them.

Rodriguez:      Okay.

**E.      Analysis**

*1.      Preservation of Error*

The State contends neither Rodriguez nor his counsel requested a hearing on Rodriguez's motion for new counsel. We disagree.

"To preserve error for appellate review, the complaining party must [timely] make a specific objection and obtain a ruling on the objection." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see* TEX. R. APP. P. 33.1(a)(1). The objection need not be specific if the trial judge was aware of the substance of the objection when it was made. *Cooper v. State*, 961 S.W.2d 222, 228 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd); *Kelly v. State*, 903 S.W.2d 809, 811 (Tex. App.—Dallas 1995, pet. ref'd). Texas courts have held that points of error on appeal must correspond or comport with objections and arguments made at trial. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998); *see Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd). We must, however, construe a party's brief liberally to reach the merits of an appeal. TEX. R. APP. P. 38.9 (stating substantial compliance with briefing rules is sufficient); *Ditta v. Conte*, 298 S.W.3d 187, 190 (Tex. 2009).

Based on a review of the record, we conclude Rodriguez was asking the trial court for assistance and trying to convey that he and his counsel were not compatible. We decline to follow the State's argument that Rodriguez failed to request a hearing; accordingly, we conclude Rodriguez preserved his argument for appellate review.

We now determine whether the trial court erred in failing to hold a hearing on Rodriguez's motion to dismiss his appointed counsel.

2.      *Rodriguez's Motion to Dismiss Counsel*

After the trial court left the bench, Rodriguez and his counsel made a record in which Rodriguez voiced his concerns. The issues raised by Rodriguez related primarily to trial strategy and preparation. Specifically, he complained defense counsel was not listening to him, was "trying to force me to go to trial and we're not ready," and had not conveyed his twenty-year offer to the State because his counsel did not believe the State would accept it. Rodriguez also professed that he was not ready to proceed to trial because there was more paperwork he wanted to review. With regard to the facts, Rodriguez claimed defense counsel did not know when the officer investigating the case "started her shift."

> This trial is already going to start and you don't even know some of the basic things, you know. That's what worries me. I've been asking y'all to—to— to get—to put continuances that I've even made. I've been asking, Please, put these continuances that I have made because we're not ready to go to trial. I'm not—you know, y'all are just throwing me to the dogs saying, No, we're ready, we're ready, we're ready. I know you're not ready, you know. I know you have—you haven't even gone over the facts and you haven't asked me who I wanted to subpoena, you haven't asked me anything. I do want to subpoena people. I do want to do these things, but y'all haven't asked. Y'all haven't even—you throw me to the dogs every time. It's like, Okay, yeah, we'll take care of it and then nothing.
>
> I gave you itemized lists like three times. Can you give me these things? And you haven't done any of them. Not even one. One item on the itemized list was Officer Kory's time she arrived at her—her arrival and her departure from the roll call and you didn't get that. And you didn't even know what time it was at all. I mean, just little basic things that I believe you should know, you know, that you don't know and haven't gone over with me, you know.

Defense counsel's frustration with Rodriguez was obvious. When the trial court returned to the bench, defense counsel whom Rodriguez had objected to in writing moved to withdraw. "At this point I would like to make a motion to withdraw as counsel for [Rodriguez]. I've lost the ability to effectively communicate with my client so that it will interfere with my ability to

represent him appropriately during the course of this trial." The trial court confirmed Rodriguez's case was on its third special setting and the incident occurred over a year prior to the date of trial.

Explaining that Rodriguez was not entitled to dual representation, the trial court denied the motions filed by Rodriguez. Regarding defense counsel's motion, the trial court opined as follows:

> I realize that it's difficult to communicate with him and deal with him in view of him wanting to approach the bench and discussing it with the Court, which we have allowed him to do on a couple of occasions. But at this point, [defense counsel] was appointed when this was a capital murder case, immediately, the day of, I believe. And then at some point in time [co-counsel] was appointed to assist, even though it was no longer a capital case and there was not a situation where there should have been or necessarily entitled to have two lawyers on the case. I did grant the request. And Mr. Rodriguez has two excellent lawyers that have been working on the case for some time so at this point on our third special setting with the jury out in the hall ready to come in, I'm going to deny your—your motion to withdraw simply because I think any problems you're experiencing we would just be passing on to the next attorney and I don't see any benefit in delaying the case because it's been a lengthy period of time. He is in custody, and you've spent a lot of time preparing. So the motion is of record, but it's denied.

The entire exchange between Rodriguez, his attorney, and the trial court occurred immediately prior to jury selection. The trial court clearly balanced Rodriguez's displeasure with his trial counsel against "the needs of fairness and against the demands of [the court's] calendar." *Cf. Gonzalez-Lopez*, 548 U.S. at 152 (citation omitted). At trial, Rodriguez was represented by both of his court-appointed attorneys.

The record supports defense counsel was prepared and represented Rodriguez throughout the five-day trial. Counsel lodged objections, vigorously cross-examined the State's witnesses, and presented several defense witnesses. The record does not reflect, and Rodriguez has not pointed this court to any evidence, that Rodriguez was actually harmed in any way by the trial court's denial of his motions. Rodriguez's motion to dismiss that was mailed to the trial court was a pre-printed form motion without any case-specific details or substantive arguments. A review of the exchange between Rodriguez and defense counsel suggested Rodriguez's chief complaint

was defense counsel's refusal to seek a motion for continuance or an acceptable plea agreement from the State. While the trial court was still away from the bench, Rodriguez asked his counsel to present his offer to the State. Counsel immediately complied, but the State rejected the offer.

The purpose of the Sixth Amendment was met: Rodriguez received effective assistance of counsel throughout his trial. *See Gonzalez-Lopez*, 548 U.S. at 152; *Gonzalez*, 117 S.W.3d at 837. We conclude the trial court's ruling was within the "zone of reasonable disagreement." *Gonzalez*, 117 S.W.3d at 839; *Hobbs*, 359 S.W.3d at 926. Thus, the trial court did not abuse its discretion in denying Rodriguez's motion to dismiss his counsel. We overrule Rodriguez's first issue.

### WITNESS TESTIMONY

In his next issue, Rodriguez contends the trial court erred in allowing the State to solicit witness testimony calling for legal conclusions.

### A.      Standard of Review

A trial court's ruling on the admissibility of evidence is subject to an abuse of discretion standard of review. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010); *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A reviewing court will not reverse a trial court's ruling on the admissibility of evidence so long as it falls within the zone of reasonable disagreement. *See Tillman*, 354 S.W.3d at 435; *Rodriguez*, 203 S.W.3d at 841. We may not reverse a trial court's decision on admissibility of evidence solely because we disagree with the court's determination. *Rodriguez*, 203 S.W.3d at 841.

### B.      Arguments of the Parties

Rodriguez contends the State improperly elicited testimony from Officer Kimberly Kory that called for a legal conclusion. Officer Kory's characterization of Rodriguez's speed as "dangerous" was analogous to asking a witness to determine whether an individual was negligent.

The State counters that whether Rodriguez's actions were "clearly dangerous to human life" is a question of fact and proper witness testimony. The State further argues that any alleged error was waived by subsequent witnesses providing identical testimony.

## C.     Proper Witness Testimony

A witness may only testify to those matters about which the witness has personal knowledge. *See* TEX. R. EVID. 602; *Hassan v. State*, 440 S.W.3d 684, 688 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Texas Rule of Evidence 701 permits a lay witness to offer opinion testimony if that opinion is "(a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." TEX. R. EVID. 701; *see Ex parte Nailor*, 149 S.W.3d 125, 134 (Tex. Crim. App. 2004). *But see DeLeon v. State*, 322 S.W.3d 375, 383 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("No witness is competent to voice an opinion as to guilt or innocence."). However, if the opinion is otherwise admissible, the testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Ex parte Nailor*, 149 S.W.3d at 134; *accord* TEX. R. EVID. 704.

## D.     Testimony in Question

Rodriguez objects to the following testimony.

State:          So when you got on the highway you said you saw him, he was—from what you saw based on your training and experience, can you tell us was—what his speed was?

Officer Kory:   I approximated the time he was probably going a hundred miles per hour.

State:          Okay. And is—is that dangerous?

Officer Kory:   Absolutely. That's the reason I decelerated because there was no—in my mind the safety aspect of it was there was no reason for me to try to catch up to him at that point because he was not going to stop.

**E.    Analysis**

In this case, Officer Kory witnessed Rodriguez driving the vehicle in an unsafe manner. Whether she believed his erratic driving—including traveling in excess of one hundred miles per hour—was dangerous was her opinion based on her perception of Rodriguez's actions. *See* TEX. R. EVID. 701; *see also Hassan*, 440 S.W.3d at 688 (permitting officers to testify based on their observations and experience). Officer Kory did not testify that she believed Rodriguez was guilty of murder, only that she believed he was driving in a manner dangerous to human life. The fact that it "embraces an ultimate issue to be decided by the trier of fact" does not make it inadmissible. *See Ex parte Nailor*, 149 S.W.3d at 134.

Because the trial court's decision to admit the testimony in question was within the zone of reasonable disagreement, we overrule Rodriguez's second issue.

## CONCLUSION

Rodriguez's request to dismiss his appointed counsel was lodged immediately prior to voir dire. The trial court noted this was the third special setting for Rodriguez. The trial court also noted Rodriguez had the benefit of two highly qualified attorneys that were well prepared for the trial. Although Rodriguez did not feel he could effectively communicate with his counsel, we cannot say the trial court erred in denying Rodriguez's motion to dismiss his appointed counsel.

Because Officer Kory's testimony describing Rodriguez's erratic driving was rationally based on her personal observations and experience, we cannot say the trial court abused its discretion in allowing the testimony.

Having overruled both of Rodriguez's issues, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

DO NOT PUBLISH