**Affirmed and Opinion Filed February 12, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00443-CR**

**JEREMY KANE QUASCHNICK, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-80333-2019**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Miskel
Opinion by Justice Molberg

After pleading guilty before the jury, appellant Jeremy Quaschnick was convicted of aggravated assault with a deadly weapon of a public servant and sentenced to twenty years' confinement in the Texas Department of Criminal Justice's Institutional Division. On appeal, he argues the trial court erred by denying his pretrial motions to continue and substitute counsel, committing *Boykin*[1] error regarding his plea, and refusing to exclude certain evidence at trial. We affirm.

---

[1] *See Boykin v. Alabama*, 395 U.S. 238 (1969).

# I. BACKGROUND

On February 5, 2019, the State charged Quaschnick, in two indictments, [2] with aggravated assault with a deadly weapon of a public servant, both first degree felonies. *See* TEX. PENAL CODE § 22.02(b)(2)(B). In this case, the indictment alleged that on or about November 19, 2018, Quaschnick did,

> then and there intentionally and knowingly threaten Trey Kiser with imminent bodily injury by pointing a firearm at and in the direction of Trey Kiser, and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of the assault, and [Quaschnick] did then and there know that Trey Kiser was a public servant, namely a peace officer for the City of Frisco, Texas, and that Trey Kiser was then and there lawfully discharging an official duty[.]

Ten days after the indictment, Quaschnick was arrested and placed into custody subject to a $20,000 bond. The same day he was placed into custody, the trial court appointed attorney Manuel Gonzalez to serve as counsel for Quaschnick, who was indigent. During Gonzalez's representation of Quaschnick, the case was set for open plea hearings on various dates in May 2019, May 2020, July 2020, and October 2020.

On October 21, 2020, the same date that had been set for an open plea hearing, Gonzalez moved to withdraw as Quaschnick's counsel. His motion to withdraw stated he was "unable to effectively communicate with [Quaschnick] so as to be able to adequately represent [him]" and that "[c]ertain conflicts of personality and

---

[2] The two indictments involved the same alleged offense on the same date but named different public servants. The second indictment was later dismissed and is not at issue in this appeal.

continuing difficulty in communication have negatively impacted counsel's ability to effectively represent" him, which Gonzalez believed would continue. His motion also indicated Quaschnick consented to the withdrawal. On October 21, 2020—the same date the motion to withdraw was filed—the trial court granted the motion and appointed as Quaschnick's new counsel Danny McDaniel, one of two attorneys who later represented Quaschnick at the jury trial that began April 19, 2021.

Quaschnick was released on bond in early November 2020, shortly after Gonzalez's withdrawal and after Quaschnick had been held in pretrial detainment for more than two years.

On April 13, 2021, six days before trial, Quaschnick, through attorney Kyle Therrian, filed a motion to substitute counsel. The motion stated Quaschnick had retained Therrian and requested that the trial court substitute Therrian for McDaniel.[3]

The next day—five days before trial—Quaschnick, through McDaniel, filed a motion for continuance. The motion stated Quaschnick was not prepared to proceed to trial and requested a continuance on two grounds: (1) he had chosen to substitute counsel for a legitimate purpose—a different attorney to pursue a different strategy and style of defense—and (2) the COVID-19 shutdown prevented his mitigation expert from securing potential evidence and exploring defensive theories.

The State opposed both motions.

---

[3] The following day, in a motion we discuss in the next paragraph, Quaschnick stated that "on April 13, 2021, [Quaschnick] was able to retain counsel of his choosing through the resources of another individual." The other individual was not named in that motion but was later revealed to be his mother.

–3–

The trial court heard both motions, along with another matter, in a pretrial hearing on April 14, 2021, the same day Quaschnick filed the continuance motion.

In the pretrial hearing, the trial court began by calling the case and making some preliminary comments:

> THE COURT: Okay. Let's go ahead and call . . . State of Texas versus Jeremy Quaschnick. We're here on pretrial for a jury trial next week, and I see a lot of last-minute motions. . . . This case has been set for trial, what now, two months? Three months?
>
> [PROSECUTOR]: Since November, Your Honor.
>
> THE COURT: Since November. It's been set for trial Monday. And here on the eve of trial, we now have a substitution of counsel because, at least according to the allegation, we've gone from being indigent with a court-appointed attorney to now miraculously able to afford defense counsel. And although I'm certainly sensitive to the defendant's – to the accused's rights to have counsel of his choosing, I'm also sensitive to the fact that this is the eve of trial that's been known for a while, and, quite frankly, I'm not happy. So, would the defense counsel like to address this, please.

McDaniel responded, and in the argument that followed, he denied the motion for continuance was a delay tactic, argued that COVID-19 had affected matters involving the mitigation specialist, explained "there's a reason" he had not moved to withdraw or "get off the case," and stated he supported Quaschnick's right to hire the lawyer of his choice and thought the trial court "should grant that." He concluded his argument by urging the court to grant the motion for continuance and stating he would have filed it for the reasons stated in the motion, "separate from [Therrian] substituting in."

The trial court then asked Therrian, if he was substituted in, whether the trial court would hear other motions for continuance "down the road" because Therrian had not had a chance to get ready for trial. Therrian answered that it would be his "objective to be ready on the next trial setting with a couple of understandings" that he then explained, which referred to a potential change in strategy that "may have to do with [Quaschnick's] desire to have different experts or different individuals called[.]" After some additional back-and-forth with Therrian, the trial court asked Therrian how much time he would need if a continuance were granted and he was to substitute in and take a position as lead counsel. After conferring in an off-the-record discussion, presumably with Quaschnick and/or McDaniel, Therrian answered, "Judge, to be safe, 120 days."

The trial court then heard argument from the State in opposition to both motions and made its ruling, stating:

> THE COURT: I'm persuaded here by the length of time that this case has been pending, and, Mr. McDaniel, as I understand the history, Mr. Therrian would be the third attorney on the case, and it's already had at least one postponement and actually maybe two or three. There's been adequate time for preparation. There's been adequate time for the employment of experts. There's been adequate time to resolve any differences in counsel, and I – you know, the motion for continuance is denied.
>
> We are set for trial Monday morning at 9 o'clock. You are number one on the docket. Mr. Therrian is welcome to join as co-counsel. If he intends to take over the case completely and flip sides, we're still going to trial Monday morning at 9 o'clock. Just letting you know in advance.
>
> At this stage, I guess we have other motions – motions in limine and that kind of thing that have just been recently filed. I've not had a

–5–

chance to look at those. We will need rulings on those. So, the motion for continuance is denied.

Therrian requested an opportunity to be heard, which the trial court granted. After alluding to other matters to be addressed in the hearing, the trial court allowed Therrian a brief recess in order to confer with Quaschnick and McDaniel. After the brief recess, Therrian entered a verbal appearance as second to McDaniel, with permission from the trial court, and per Therrian's request, the trial court then allowed Therrian to call Quaschnick's mother as a witness for purposes of making a record on the motions for substitution and continuance.

As the above paragraphs reflect , in the hearing transcript, the trial court denied the motion for continuance but made no clear ruling on the motion to substitute counsel, except to the extent that the trial court allowed Therrian to enter a verbal appearance as second to McDaniel. There is no question, however, that the trial court denied the motion to substitute counsel, as the trial court signed an order stating the motion was "DENIED" and stating, "New counsel entering case as co-counsel."[4]

On April 16, 2021, Quaschnick, through McDaniel, filed an election form to have the jury determine punishment and an application for community supervision if convicted.

---

[4] McDaniel and Therrian both represented Quaschnick at trial; Therrian represents him on appeal.

On the day trial began, but before voir dire, the trial court allowed additional testimony from Quaschnick and his mother related to Quaschnick's motion for continuance, and Quaschnick, through Therrian, reurged the motion for continuance "as a formality."  The trial court responded:

> As a formality, I'm denying it for the same reasons I stated on the record. This case has been pending for well over two years, plenty of time to develop a variety of different defenses, and the – and there's been plenty of time to bring in whatever experts you may need to bring in.  So, the request for continuance is denied.

After the parties completed voir dire and the trial court ruled on other matters, the State presented the indictment.  In response, Quaschnick pleaded guilty before the jury.  We quote the plea colloquy in Section II.B. below.

The jury found Quaschnick guilty of the offense as charged in the indictment and assessed punishment at twenty years' confinement in the Texas Department of Criminal Justice's Institutional Division.  The trial court accepted the jury's verdict, pronounced sentence in open court, and entered judgment consistent with the jury's verdict.  Quaschnick filed a motion for new trial that was overruled by operation of law.  The trial court certified his right to appeal, and Quaschnick timely appealed.

## II. Issues and Analysis

Quaschnick raises six issues, which we group together by various topics.  In each, he asks that we reverse the judgment and remand for a new trial.

## A.  Denial of Requests for Continuance and to Substitute Counsel

In his first three issues, Quaschnick argues the trial court erred by denying his motion for continuance and request to substitute counsel, on the theory that the trial court violated Quaschnick's Sixth Amendment right to choice of counsel and his right to due process by denying those motions and proceeding with trial.[5]  For all three issues, he raises the same basic argument—arguing, in essence, that the trial court erred by refusing to continue the trial and to allow him to substitute Therrian, his newly-retained counsel, for his previously-appointed attorney, McDaniel, in order to pursue a different trial strategy.

An accused has the right to select and be represented by an attorney of the accused's choice.  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Rosales v. State*, 841 S.W.2d 368, 373–374 (Tex. Crim. App. 1992).  But that right "is not absolute, and may under some circumstances be forced to bow to 'the general interest in the prompt and efficient administration of justice.'" *Rosales*, 841 S.W.2d at 374 (quoting *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir. 1978)) (internal footnote omitted); *see Gonzalez v. State*, 117 S.W.3d 831, 837 (Tex. Crim. App. 2003) ("right to counsel of choice is not absolute" and "strong presumption in favor of a defendant's right to

---

[5] Quaschnick states these issues as follows:  (1) "The trial court's denial of substitution [of counsel] violated [Quaschnick's] Sixth Amendment right to the attorney and defense of his choosing;" (2) "[t]he trial court's denial of [Quaschnick's] motion for continuance violated his Sixth Amendment right to the attorney and defense of his choosing;" and (3) "[t]he trial which ensued after the court denied substitution of [Quaschnick's] chosen counsel violated due process."

retain counsel of choice . . . may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice").

Nevertheless, "when a trial court unreasonably or arbitrarily interferes with the defendant's right to choose counsel, its actions rise to the level of a constitutional violation." *Gonzalez*, 117 S.W.3d at 837.

Quaschnick argues the trial court's denials of his motions to continue and to substitute counsel were unreasonable and arbitrary and deprived him of his choice of counsel and due process rights. The State disputes this and argues the trial court did not abuse its discretion in denying the motions based on the record before us.

In *Rosales*, the Texas Court of Criminal Appeals listed some considerations that should inform a trial court's decision whether to grant a continuance due to the absence of counsel of defendant's choice, stating:

> While not a complete listing, some of the factors include the following: (1) the length of delay requested, (2) whether other continuances were requested and whether they were denied or granted, (3) the length of time in which the accused's counsel had to prepare for trial, (4) whether another competent attorney was prepared to try the case, (5) the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court, (6) whether the delay is for legitimate or contrived reasons, (7) whether the case was complex or simple, (8) whether the denial of the motion resulted in some identifiable harm to the defendant, [and] (9) the quality of legal representation actually provided.

841 S.W.3d at 374 (quoting *Ex Parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982) (internal citations omitted)).

–9–

*Rosales* also explained, "[U]nder an abuse of discretion standard it is not our role to reweigh the factors, but to determine whether the trial court could reasonably have balanced them and concluded that the fair and efficient administration of justice weighed more heavily than appellant's right to counsel of his choice." *Id.* at 375.

Based on the record before us, and without reweighing the factors listed in *Rosales* and *Ex Parte Windham*, we determine the trial court could reasonably have balanced these factors by concluding the fair and efficient administration of justice weighed more heavily than Quaschnick's right to counsel of his choice and thus conclude the trial court did not abuse its discretion in denying Quaschnick's motion to continue and to substitute counsel. *Id.*[6]

We overrule Quaschnick's first three issues.

---

[6] We agree with the following observations of one of our sister courts:

> Incremental to furthering the administration of justice is the old maxim that justice delayed equates justice denied. Yet, justice runs not only in favor of an appellant. Both the appellee and society in general also have an interest in seeing that the judgments rendered by their courts of law are enforced.
>
> Similarly, the judicial system itself has an interest at stake. Delay in resolving disputes increases the burden already imposed upon a court's ever growing docket. Moreover, attention is diverted from addressing cases ripe for determination to unnecessarily shepherding those which grow stagnant because of a party's intentional or negligent delay. Thus, a court's inherent power to administer justice must necessarily include the ability to develop reasonable means to assure 1) that a cause is disposed of expeditiously and 2) that a judgment becomes final and enforceable in an expeditious manner. Of course, we recognize that the means adopted must not contravene any constitutional provision, statute, or recognized theory of common law.

*Rodriguez v. State*, 970 S.W.2d 133, 135 (Tex. App.—Amarillo 1998, pet. refused).

**B. Guilty Plea and Alleged *Boykin* Error**

In his sixth issue, Quaschnick argues that the record fails to show he made a knowing, voluntary, and intentional decision to waive all trial rights and enter a guilty plea, as required by *Boykin*.[7]

*Boykin* confirms that several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial, including the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Id*. at 243.

*Boykin* states, "We cannot presume a waiver of these three important rights from a silent record[,]" *id*., and it is "error, plain on the face of the record, for the trial judge to accept [a defendant's] guilty plea without an affirmative showing that it was intelligent and voluntary." *Id*. at 242; *see Ex parte Barnaby*, 475 S.W.3d 316, 322 (Tex. Crim. App. 2015) (per curiam) (waiver must be voluntary and a knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences).

Unless the appellate record discloses Quaschnick entered his guilty plea voluntarily and understandingly, we must presume he did not and rule accordingly.

---

[7] Because Quaschnick raises no issue regarding code of criminal procedure article 26.13, we limit our review to determining whether his plea was intelligent and voluntary under *Boykin*. *See Nunes v. State*, Nos. 05-04-01741-CR, 05-04-01742-CR, 05-04-01743-CR, 2006 WL 762841, at *7, n.2 (Tex. App.—Dallas Mar. 27, 2006, pet. ref'd) (not designated for publication) (limiting review in that case to whether plea was voluntary under *Boykin*, for same reason).

*Davison v. State*, 405 S.W.3d 682, 690 (Tex. Crim. App. 2013) (citing *Boykin*, 395

U.S. at 244). If *Boykin* error is found, we then consider any harm under appellate

rule 44.2(a).[8]

As support for his argument that the record in this case is silent and represents

*Boykin* error, Quaschnick cites the following exchange in the trial record:

> [THE COURT]: Mr. McDaniel, who is entering the plea, you or Mr. Therrian?
>
> MR. McDANIEL: I will be, Your Honor.
>
> THE BAILIFF: Are we ready for the jury?
>
> THE COURT: Yes.
>
> THE BAILIFF: All rise.
>
> (Jury enters the courtroom.)
>
> THE COURT: At this point in the proceeding, we will have [the prosecutor] present the indictment on behalf of the State. Mr. Quaschnick, would you and your attorney, Mr. McDaniel, please stand. Thank you. Go ahead.
>
> [PROSECUTOR]: [read indictment]
>
> THE COURT: Thank you.
>
> Mr. McDaniel, how does the defendant plead?
>
> [QUASCHNICK]: Guilty, Your Honor.

---

[8] A pure *Boykin* claim—a claim that the record is absolutely unrevealing with respect to whether a guilty plea was entered intelligently—is not subject to ordinary principles of procedural default and, if error is found, is subject to constitutional harm analysis under appellate rule 44.2(a). *See Davison*, 405 S.W.3d at 690–91; *Matthews v. State*, Nos. 05-20-00212-CR, 05-20-00213-CR, 2021 WL 3855637, at *6 (Tex. App.—Dallas Aug. 30, 2021, no pet.) (mem. op., not designated for publication) (due process complaint is reviewed as constitutional error under appellate procedure rule 44.2(a), citing *Davison*).

THE COURT: The defendant has entered a plea of guilty in open court. What that means is that we will then begin the punishment phase of the trial. This shortens the trial somewhat, although a large amount of the same evidence will come in, but just on the punishment phase. Because there are some pending motions that pertain to the punishment phase, I'm going to have to ask the jury to retire from the courtroom for a few minutes while we discuss those motions, at which point you'll be brought back. Bailiff, if you could take the jury out to the – out of the room. Thank you.

The State acknowledges the trial court did not directly admonish Quaschnick on the record regarding the consequences of his guilty plea. Nevertheless, the State argues no *Boykin* error exists because Quaschnick did not waive his right against self-incrimination, right to a jury trial, or right to confront witnesses, and in any event—and unlike *Boykin*—the record affirmatively shows Quaschnick's guilty plea was made knowingly and voluntarily. We agree with the State on both points.

First, on the record before us, no admonishment was necessary under *Boykin* because Quaschnick did not waive his right against self-incrimination, right to a jury trial, or right to confront witnesses. *See Nunes*, 2006 WL 762841, at *6–8. As in *Nunes*, *see id*., Quaschnick pleaded guilty before the jury, chose not to testify during the punishment phase, and, in the punishment phase, his counsel cross-examined the State's witnesses who were called to testify against him and called his own witnesses. Thus, we conclude Quaschnick did not waive his right against self-incrimination, right to a jury trial, or right to confront witnesses.[9]

---

[9] The record here is similar, though not identical, to the record in *Nunes*. In *Nunes*, the jury learned about the defendant's guilty plea during voir dire, not after, as was the case here. *See Nunes*, 2006 WL 762841, at *1. This difference does not affect our analysis.

–13–

Even if we assume Quaschnick waived these rights, unlike *Boykin*, the record before us is not silent on the issue of whether Quaschnick's guilty plea was knowingly and voluntarily made.  First, as voir dire began, the trial court explained to the venire, in Quaschnick's presence, that a defendant is presumed innocent and has a right not to testify, and that if a defendant chose not to testify, the venire could not consider his failure to testify as evidence of guilt.  Second, during voir dire, the State and Quaschnick's counsel also made statements in his presence regarding Quaschnick's right to a jury trial and his right not to testify.  Third, we may infer Quaschnick's guilty plea was voluntary based on the record before us, as the record reflects the plea was part of a trial strategy to persuade the jury to grant him probation,[10] as evidenced by McDaniel's statement Quaschnick was "not going to hide from" the State's contentions regarding what happened,[11] and McDaniel's statement in closing argument which tied Quaschnick's request for probation to his acceptance of responsibility through his plea.[12]

---

[10] *See Gardner v. State*, 164 S.W.3d 393, 399–400 (Tex. Crim. App. 2005) (voluntary nature of the defendant's guilty plea was "shown in the record by the overwhelming evidence that [his] guilty plea was part of a strategy . . . to persuade the jury to grant appellant probation"); *Abrego v. State*, 611 S.W.3d 139, 141 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (defendant's only viable defensive strategy in that case was to plead guilty and put on evidence of mitigating circumstances during the punishment stage of trial, a defensive strategy that was "apparent from the record" and supported a finding that the defendant knowingly and voluntarily waived his constitutional rights).

[11] During the punishment phase, after the State made its opening statement and as McDaniel began Quaschnick's opening statement, McDaniel stated, "A lot of what [the prosecutor] just said happened. [The prosecutor] is correct.  A lot of it happened.  We're not going to hide from it.  Mr. Quaschnick didn't hide from it this morning when he pled guilty as opposed to not guilty."

[12] In his closing argument, McDaniel stated, "He's guilty, he pled guilty, he took responsibility, and now I guess I would suggest that perhaps there's time for some mercy.  And that would be to place him on probation."

–14–

We overrule Quaschnick's sixth issue.

## C.  State's Use of Information in Jail Medical Records

In his fourth issue, Quaschnick argues the State's use of information in Quaschnick's jail medical records violated his right to privacy under the Fourth Amendment, on the theory that *State v. Martinez*, 570 S.W.3d 278 (Tex. Crim. App. 2019) "recognized a societal expectation of privacy in the 'informational dimension' of medical treatment" and that the State invaded Quaschnick's legitimate expectation of privacy by obtaining his jail medical records without a warrant.[13]

In trial, during the State's cross-examination of Quaschnick's mother and after the State's case-in-chief, his mother testified Quaschnick was in jail for 710 days before he bonded out in this case. The State then asked her, apparently referring to information from Quaschnick's jail medical records, "Would it surprise you to know that he refused to take the medications that were prescribed to him about 266 times? 269 times?" Before his mother answered, Quaschnick's counsel asked to approach the bench, and the trial court granted the request.

Once at the bench, Quaschnick's counsel objected, in part, by arguing that under *Martinez*, *see id.*, Quaschnick had an expectation of privacy in those records and that the State could therefore acquire the records only through a warrant, not a subpoena. Quaschnick's counsel described the situation as a "case of first

---

[13] In their briefing, both parties indicate the records were obtained by subpoena.

impression" to the trial court, and the trial court overruled the objection.[14] The State then resumed its questioning of Quaschnick's mother, referring to Quaschnick's "refusal on literally hundreds of times to take any kind of medications that were prescribed to him in the jail" and asking his mother, "Is that surprising to you or does that sound about right?" She answered, "He wanted those dosages to be adjusted." Later witnesses also testified about certain other information contained in the records, but the records were not offered into evidence.

On appeal, Quaschnick raises the same Fourth Amendment argument he raised in the trial court and urges us to reverse the judgment and remand the case for a new trial because the trial court erred in denying his motion to suppress. The State, in contrast, argues the trial court's ruling was not an abuse of discretion and that *Martinez* is more limited than Quaschnick describes.

Both the United States and Texas constitutions protect against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. Proof of a reasonable expectation of privacy is at the forefront of all Fourth Amendment claims, and any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show he personally had a reasonable expectation of privacy that the government invaded and prove he was a victim of the unlawful search or seizure. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex.

---

[14] Quaschnick also argued the court should exclude the information because of the State's failure to provide certain information Quaschnick claimed was required under code of criminal procedure article 39.14. We address that issue in section II.D. below.

Crim. App. 2004) (citations omitted). Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation. *Id.* If a defendant does so, the burden then shifts to the State to prove that the search or seizure was reasonable under the totality of the circumstances. *Amador v. State*, 221 S.W.3d 666, 672–73 (Tex. Crim. App. 2007). Whether a specific search or seizure is "reasonable" under these standards is subject to de novo review. *Kothe*, 152 S.W.3d at 62.

We agree with the State that *Martinez* is more limited than Quaschnick describes. *Martinez* addressed the extent of privacy interests in blood or other biological samples,[15] not a broad prohibition against disclosure of jail medical records except by warrant. While *Martinez* suggests that HIPAA reflects a societal view that health information is private,[16] Quaschnick's reliance on that language to urge reversal in this case extends *Martinez* too far in our view, especially when we consider it in conjunction with the court's earlier decisions in *Hardy* and *Huse*, both of which are referred to in *Martinez*.

---

[15] *Martinez* states:

> We hold that there is an expectation of privacy in blood that is drawn for medical purposes. The expectation is not as great as an individual has in the sanctity of his own body against the initial draw of blood. . . . But it is greater than an individual has in the results of tests that have already been performed on the blood. Individuals in the latter case have, as we held in [*State v. Hardy*, 963 S.W.2d 516 (Tex. Crim. App. 1997)] and [*State v. Huse*, 491 S.W.3d 833 (Tex. Crim. App. 2016)], no expectation of privacy.

570 S.W.3d at 291 (internal citations omitted).

[16] *Martinez* described as "well-taken" the argument that "the existence of federal and state privacy laws governing the disclosure and transmission of health information, such as HIPAA, reflects a societal view that health information is private."

–17–

In *Hardy*, the court stated:

> We express no opinion concerning whether society recognizes a reasonable expectation of privacy in medical records in general, or whether there are particular situations in which such an expectation might exist. We note only that, given the authorities discussed, whatever interests society may have in safeguarding the privacy of medical records, they are not sufficiently strong to require protection of blood-alcohol test results from tests taken by hospital personnel solely for medical purposes after a traffic accident.

*Id*.

In *Huse*, the court considered whether the advent of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") materially impacted the court's holding in *Hardy* with respect to Fourth Amendment standing to complain of the State's acquisition of specific medical records.[17] In response to arguments similar to those Quaschnick makes here, the court decided, in effect, the answer was "no." The court acknowledged that while "HIPAA might support a broader claim that society now recognizes (if it did not already) that a patient has a legitimate expectation of privacy in his medical records *in general*[,]" but stated the broader issue was not before the court in that case or in *Hardy*.

Additionally, with respect to the narrower issue *Hardy* decided, *Huse* stated, "HIPAA actually serves to bolster our holding. While codifying a broad requirement of patient confidentiality in medical records, HIPAA nonetheless provides specific

---

[17] *Huse* involved a "review [of] the court of appeals's conclusion that *Hardy*'s holding remains unaffected by the subsequent enactment of HIPAA[,]" *see* 491 S.W.3d at 840, and concluded, in part, that the advent of HIPAA did not "materially impact [the court's] holding in *Hardy* with respect to Fourth Amendment standing to complain of the State's acquisition of specific medical records." *Id*. at 835.

exceptions in which the disclosure of otherwise protected health care information is permitted[,]" including "Section 164.512(f)(1)(ii)(B) of Title 45 of the Code of Federal Regulations, [which] allows for the disclosure of 'protected health information' when to do so is '[i]n compliance with and as limited by the relevant requirements of . . . [a] grand jury subpoena[.]" *Id*. *Huse* concluded it was not error to conclude that *Hardy*'s narrow holding remains valid with respect to Fourth Amendment standing, even in light of the subsequently enacted provisions of HIPAA." *Id*. at 842.

Despite Quaschnick's arguments to the contrary, we have not found, and Quaschnick has not cited to, any binding authority establishing that Quaschnick had a legitimate expectation of privacy in his jail medical records and that such records could be obtained only by warrant as Quaschnick argues. To the extent he relies on *Martinez*'s reference to HIPAA as the basis for his expectation, we find no error on this record in the trial court's denial of his motion to suppress.

As *Huse* suggests, HIPAA provides for several permissible forms of disclosure of protected health information, including through various types of subpoenas. *See*, *e.g.*, 45 C.F.R. § 164.512(e)(1)(ii) (permitting disclosure of "protected health information in the course of any judicial or administrative proceeding . . . [i]n response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal" if certain other requirements are met); *id*. § 164.512(f)(1)(ii)(A) (permitting disclosure

for records provided per "[a] subpoena . . . issued by a judicial officer"); *id.* § 164.512(f)(1)(ii)(B) (permitting disclosure of protected health information when to do so is "[i]n compliance with and as limited by the relevant requirements of . . . [a] grand jury subpoena").

We overrule Quaschnick's fourth issue. Our decision in this regard is narrow and should not be read as a ruling on the broad question of the extent of an individual's privacy interests in his jail medical records, if any, under the Fourth Amendment, as that broad issue is not before us. Instead, we simply reject Quaschnick's argument that *Martinez* compels us to reverse the trial court's denial of Quaschnick's motion to suppress information in his jail medical records.

## D. State's Use of Information in Jail Disciplinary Records

In his fifth issue, Quaschnick argues the trial court erred by refusing to exclude information in Quaschnick's jail disciplinary records, a remedy he claims was proper under code of criminal procedure article 39.14[18] for what he describes as the State's failure to produce material evidence as defined in *Watkins v. State*, 619 S.W.3d 265, 291 (Tex. Crim. App. 2021) ("[T]he word 'material' as it appears in the statute

---

[18] Subject to restrictions not at issue here, code of criminal procedure article 39.14 states:

> [A]s soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of . . . any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state."

TEX. CODE CRIM. PROC. art. 39.14(a).

means 'having a logical connection to a consequential fact' and is synonymous with 'relevant' in light of the context in which it is used in the statute.").

The State obtained Quaschnick's jail disciplinary records through a pretrial subpoena duces tecum and notified Quaschnick of its intent to offer those records as business records at trial. Quaschnick filed a pretrial motion to exclude these records under code of criminal procedure article 39.14, arguing exclusion was proper because the State had refused to produce certain material evidence—namely, information on eight jailers he claimed were under investigation in connection with the death of another inmate and at least one of whom, according to Quaschnick, had disciplined him.[19] In his motion to exclude, Quaschnick argued he was entitled to the information on the eight jailers because "at least one-and perhaps more than one-individual who accuse[d] [Quaschnick] of misconduct was terminated from the Sheriff's Office for misconduct."

When Quaschnick raised the motion before trial, the trial judge indicated he would understand Quaschnick's position if, for example, Quaschnick had requested information about arresting officers who had a history of disciplinary issues and stated, when discussing that example, that he thought Quaschnick "would be entitled

---

[19] Quaschnick requested "[t]he identity of all officers or jailers who have been disciplined, fired, or who have resigned in the wake of, or as a result of, their involvement in the death of [the other inmate]," "[t]he Collin County Sheriff's Office disciplinary records of each officer involved," and "[a]ny current documentary or physical evidence in the possession of the Texas Rangers pertaining to their investigation of each officer involved, including investigative notes, recorded witness interviews, or drafts of investigative reports." Although the officers were not named in Quaschnick's article 39.14 request, his counsel indicated the group consisted of eight officers, one who resigned, and seven who were terminated.

to that." In contrast, the trial court described Quaschnick's argument with regard to the information about the jailers as "attenuated." The trial court then denied the motion to the extent it asked the court to require the State to produce documents and stated that, "[t]o the extent that [the motion suggests] that certain evidence be suppressed," the court would "deal with it at the time that it is offered."

During trial, the State did not offer the jail disciplinary records as evidence but did refer to certain information from the records. Quaschnick's counsel raised the motion to exclude again in the bench discussion that occurred after the State asked Quaschnick's mother whether it surprised her to know he refused to take medications prescribed to him about 266 or 269 times. Quaschnick's counsel objected, in part, by arguing that the information should be excluded as requested in the motion to exclude because of the State's failure to produce the requested information on the jailers. The trial court overruled that objection but allowed Quaschnick's counsel to make a proffer of what he anticipated that information would show. Counsel stated, in part:

> It's our understanding from public records from sheriff's statements that there's a pending criminal investigation into the jailers who have been terminated. There's a clear indication and public records and statements by the sheriff that these individuals are being investigated and/or terminated because of wrongdoing, and we requested those records from the State and the State has declined to produce those. And for that basis, we're asking the Court to exclude any evidence pertaining to jail records as an equitable remedy to the State's nonproduction.

The trial court denied the request to exclude and suppress the records, in part, because of "the attenuating nature of the request" and a belief that *Watkins* did not extend to such a degree.[20]   Later, after both sides rested and closed, but before the charge was read to the jury, Quaschnick's counsel supplemented his prior proffer with defense exhibit one, a news article he described as substantiating his previous proffer that there was an ongoing criminal investigation and seven detention officers were terminated.  His counsel again asked the trial court to grant the motion to exclude and asked that the jury be admonished to disregard the State's testimony pertaining to jail misconduct.  The trial court accepted the proffer for its limited purpose and again denied the motion to exclude.  The court did not admonish the jury to disregard the State's testimony pertaining to jail misconduct, but the court's charge acknowledged the State had introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case and instructed the jury not to consider the testimony for any purpose unless the jury found and believed beyond a reasonable doubt that Quaschnick committed the other acts, if any.

As indicated above, on appeal, Quaschnick argues the trial court erred by refusing to exclude information in his jail disciplinary records as a remedy to what he describes as the State's willful withholding of material evidence.  The State, in contrast, argues the trial court did not abuse its discretion in refusing to exclude the

---

[20] *See Watkins*, 619 S.W.3d at 291 (holding "the word 'material' as it appears in the statute means 'having a logical connection to a consequential fact' and is synonymous with 'relevant' in light of the context in which it is used in the statute).

information and that, even if the trial court erred, it was harmless under rule of appellate procedure 44.1(b).  We agree with the State.

Article 39.14 requires, among other things, that the State produce requested discovery as soon as practicable after receiving a defendant's timely request. TEX. CODE CRIM. PROC. art. 39.14(a).  We review the trial court's decision to admit or exclude evidence under an abuse-of-discretion standard.  *See Francis v. State*, 428 S.W.3d 850, 855 (Tex. Crim. App. 2014); *Salazar v. State*, 38 S.W.3d 141, 153 (Tex. Crim. App. 2001).  We will uphold the trial court's evidentiary ruling if it is within the zone of reasonable disagreement.  *Salazar*, 38 S.W.3d at 153.

Based on the record before us, we conclude the trial court did not abuse its discretion in refusing to exclude information in Quaschnick's jail disciplinary records, as it was within the zone of reasonable disagreement for the trial court to reach the conclusion it did.  *See id.*  Even if we were to conclude the trial court abused its discretion by refusing to exclude the information, based on the record before us, we conclude the error did not affect Quaschnick's substantial rights.  *See* TEX. R. APP. P. 44.2(b).

We overrule Quaschnick's fifth issue.

## III. Conclusion

We affirm the trial court's judgment.

210443f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

/Ken Molberg/
KEN MOLBERG
JUSTICE

–25–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JEREMY KANE QUASCHNICK,
Appellant

No. 05-21-00443-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 401-80333-
2019.
Opinion delivered by Justice
Molberg. Justices Pedersen, III and
Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 12th day of February, 2024.